EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

EL PASO NATURAL GAS COMPANY,
El Paso Products Company and El
Paso Company, Defendants.

No. EP–83–CA–108.

United States District Court,
W.D. Texas,
El Paso Division.

Dec. 31, 1985.

Joseph H. Mitchell, Regional Atty., Tela Gatewood, Supervisory Trial Atty., and Alicia G. Burkman, Trial Atty., E.E.O.C., Dallas Dist. Office, Dallas, Tex., for plaintiff.

Kenneth R. Carr, Kurt G. Paxson, Grambling & Mounce, and Harold H. Young, Jr., Asst. Gen. Counsel, El Paso Natural Gas Co., El Paso, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

HUDSPETH, District Judge.

This is an action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 623 et seq. The issue presented is whether a company policy requiring the pilots of corporate aircraft to cease flying operations at age 60 is a violation of the Age Discrimination in Employment Act, or, whether it is, as the Defendants contend, a bona fide occupational qualification. The trial was bifurcated, and the issue of liability alone was tried to the Court without a jury. The Court's findings of fact and conclusions of law with respect to the issue of liability are included in this opinion.

### A. *Factual Background.*

Defendant El Paso Natural Gas Company is a Delaware corporation doing business in the State of Texas and in the Western District of Texas. Its principal office is located in the City of El Paso, Texas. It is engaged in the business of operating natural gas pipelines in interstate commerce, and at all times relevant to this lawsuit it has employed more than 20 employees. Defendant, The El Paso Company, is the parent company of El Paso Natural Gas Company and it maintains its principal office in El Paso, Texas. It is engaged in the production and distribution of petrochemical products, fibers, textiles and other products and services in interstate commerce, and at all times relevant to this lawsuit it has employed more than 20 employees. Defendant El Paso Products Company was at all times prior to January 1, 1984 a subsidiary of The El Paso Company. It is a Texas corporation with its principal office located in Odessa, Texas. It is engaged in the production and distribution of petrochemicals and agricultural chemicals in interstate commerce, and at all times relevant to this lawsuit it has employed more than 20 employees. Plaintiff Equal Employment Opportunity Commission is an agency of the United States Government charged with the enforcement of the Age Discrimination in Employment Act. It is authorized to bring the present action by 29 U.S.C. § 626(b) as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781.

The Defendants maintain a fleet of corporate aircraft for the purpose of providing air transportation to the executives, personnel and business guests of the El Paso Natural Gas Company and its affiliated companies. The Defendants' aircraft fleet consists of two single-engine propeller airplanes used in pipeline patrol; four twin-engine turboprop airplanes known as Cheyenne IIs; two twin-engine jet airplanes known as Falcon 20s, and one Gulf-Stream II, a somewhat larger twin-engine jet airplane. At the time of the trial, the Defendants employed 19 pilots to operate the corporate aircraft fleet. The bases of operation included El Paso, Midland and Houston, Texas. As the name implies, the pipeline patrol aircraft were used simply to fly over the pipeline system to check for any problems. The turboprop aircraft (Cheyenne IIs) are used to fly passengers to domestic destinations within 1,000 miles of El Paso, Texas. The Falcon 20 jet aircraft are used to transport passengers to destinations throughout the United States and occasionally into Canada, Mexico, or other Latin-American countries. The Gulf-Stream II heavy jet operates internationally, including occasional use in transoceanic flights. The Defendants require their pilots to hold Class I medical certificates, meaning that the pilots must undergo a physical examination every six months. Those pilots who operate the jet aircraft are additionally required to undergo simulator training twice a year, and the twin-engine turboprop pilots are required to undergo simulator training annually. The duties of the companys' pilots include flying days and nights, visual and instrument, doing their own weather checking and fuel computation, and frequently landing at airports with which the pilot is not familiar.

Since they began their flying operations, the Defendants have followed a policy of requiring their corporate pilots to cease flying operations upon reaching the age of

60. If a nonflying position for which the pilot is qualified is available within the company organization at the time he reaches his sixtieth birthday, the pilot is given the opportunity to transfer to the nonflying position. If he declines to accept the transfer, or if no position is available for which the pilot is qualified, he is retired. Since the institution of this policy, a total of seven corporate pilots have reached the age of 60 and have been required to cease flying operations.[1]

### B. *Is Defendants' Age 60 Rule a Bona Fide Occupational Qualification?*

The Age Discrimination in Employment Act, 29 U.S.C. § 623 et seq., protects workers between the ages of 40 and 70 from discrimination on the basis of age. It is undisputed that the Plaintiff has shown a prima facie case of violation of the Age Discrimination in Employment Act by showing that Defendants require their corporate pilots to retire from flying status when they reach their sixtieth birthday. The burden shifted to the Defendants to establish by a preponderance of the evidence that their policy constituted a bona fide occupational qualification.

■ Title 29, United States Code, Section 623(f) provides in pertinent part as follows:

"It shall not be unlawful for an employer, employment agency, or labor organization—

"(1) to take any action. otherwise prohibited ... where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business...."

The "particular business" involved in this case is not the entire spectrum of corporate business, but rather the specific "business" of the operation of corporate aircraft by the Defendants' corporate pilots. In other words, "particular business" means the specific job or position from which the protected individual is excluded by virtue of his or her age. *Trans World Airlines, Inc. v. Thurston,* —— U.S. ——, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985). The regulations promulgated by the Equal Employment Opportunity Commission under the Age Discrimination in Employment Act correctly state the burden of proof when an employer relies upon the bona fide occupational qualification (BFOQ) exception to the Act. Title 29, CFR § 1625.6(b) provides as follows:

"An employer asserting a BFOQ defense has the burden of proving that (1) the age limit is reasonably necessary to the essence of the business, and either (2) that all or substantially all individuals excluded from the job involved are in fact disqualified, or (3) that some of the individuals so excluded possess a disqualifying trait that cannot be ascertained except by reference to age. If the employer's objective in asserting a BFOQ is the goal of public safety, the employer must prove that the challenged practice does indeed effectuate that goal and that there is no acceptable alternative which would better advance it or equally advance it with less discriminatory impact."

This analysis is consistent with that approved by the Fifth Circuit, see *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224 (5th Cir.1976), and the United States Supreme Court, see *Western Airlines v. Criswell,* —— U.S. ——, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985). In the instant case, the Defendants contend that the age limit on pilots is reasonably necessary to the safe operation of its corporate aircraft, and that it is impossible or highly impractical to deal with pilots over the age of 60 on an individual or case-by-case basis. The proof offered by Defendants in an effort to sustain their burden proceeded along two distinct but parallel lines. First, the Defendants contend that they are entitled to rely upon

---

**1.** The Equal Employment Opportunity Commission represents only six of those seven pilots in the present litigation. The seventh pilot, Joe H. Hamlin, brought his own suit under the Age Discrimination in Employment Act long before the present litigation commenced. See *Hamlin v. El Paso Company, et al.,* No. MO-79-CA-63, Midland-Odessa Division, Western District of Texas. Hamlin's case was tried to a jury, and he lost. No appeal was taken.

the determination by the Federal Aviation Administration that pilots of commercial aircraft not be permitted to fly after attaining the age of 60. Second, the Defendants offered expert witnesses of their own in an effort to prove that it is "impossible or highly impractical" to deal with older pilots on an individualized basis.

### 1. The Federal Aviation Administration's Age 60 Rule for Commercial Airline Pilots.

In 1959, the Federal Aviation Administration adopted the predecessor to the rule now codified at 14 CFR § 121.383(c), which provides in pertinent part as follows:

"No person may serve as a pilot on an airplane engaged in operations under this part [2] if that person has reached his 60th birthday."

The genesis of the age 60 rule lay in the Administration's concern about two primary factors: The introduction of jet aircraft into commercial aviation, with the increased speeds at which these anticipated aircraft would operate, and the aging of the overall commercial pilot population. Pursuant to the recommendation of a committee appointed by the Administrator to study the matter, the so-called "age 60" rule was adopted. The rule has remained intact for over 25 years, and remains in force today, despite frequent reconsideration and review. For example, in 1979 Congress enacted Public Law 96–171, 93 Stat. 1285, which directed the National Institutes of Health in consultation with the Secretary of Transportation to conduct a special study to determine whether the age 60 rule was medically warranted. In response to this legislation, the Director of the National Institutes of Health assigned primary responsibility to the National Institute on Aging, which assembled a panel of experts to study the matter. In 1981, the Panel issued its report, which contained the following conclusions and recommendations:

"The Panel attaches no special medical significance to age 60 as a mandatory age for retirement of airline pilots. It finds, however, that age-related changes in health and performance influence adversely the ability of increasing numbers of individuals to perform as pilots with the highest level of safety and, consequently, endanger the safety of the aviation system as a whole. Moreover, the Panel could not identify the existence of a medical or performance appraisal system that can single out those pilots who would pose the greatest hazard because of early, or impending, deterioration in health or performance.

"THE PANEL THEREFORE RECOMMENDS:

"(1) that the present age limit for air carrier pilots in command and first officers be retained."

The Panel further recommended that the Federal Aviation Administration itself engage in a systematic program of collection of medical and performance data necessary to allow it to consider relaxation of the age 60 rule. Pursuant to the recommendation of the Panel, the Federal Aviation Administration issued in 1982 an advance notice of proposed rule making, soliciting information that might allow it to relax the existing age 60 rule. 47 Fed.Reg. 29782 (July 8, 1982). Hundreds of comments were received. After considering these comments, the FAA withdrew its advance notice of proposed rule making. 49 Fed.Reg. 14692 (April 12, 1984). In its notice of withdrawal, the FAA made the following statement:

"The FAA is convinced that to maintain the highest standards of safety for Part 121 operations, as airlines are required to do, airline pilots should not be permitted to serve past age 60. This is based on the findings made by the FAA in 1959 that were supported by the NIA study and by a number of comments. Those findings are that advanced age does indeed adversely affect the level of

**2.** A reference to Part 121 of the Federal Air Regulations, which pertains to the operations of

commercial air carriers.

safety for Part 121 operations and that currently no medical or performance tests are available which afford a sufficiently reliable basis for predicting or precluding those adverse effects in any individual case."

In other words, the Federal Aviation Administration determined that the age 60 rule should be continued without change.

■ The FAA rule requiring retirement of commercial airline pilots at age 60 is, of course, relevant evidence in support of the Defendants' BFOQ defense in the instant case. *Western Airlines v. Criswell, supra,* 105 S.Ct. at 2754. The extent to which the rule is probative turns upon the congruity between the occupations of commercial airline pilot and corporate pilot. *Western Airlines v. Criswell, supra; Johnson v. Mayor and City Council of Baltimore,* — U.S. —, 105 S.Ct. 2717, 2727, 86 L.Ed.2d 286 (1985). In this case, the Defendants argue that there is complete and utter congruity between the two occupations. The Court agrees. There is no substantial difference between the work performed by commercial airline pilots and the corporate pilots employed by the Defendants in this case. The Defendants' pilots transport significant numbers of passengers over long distances in various kinds of aircraft, including jet aircraft. If anything, the duties imposed upon the Defendants' corporate pilots are more onerous than those undertaken by airline pilots. For example, the Defendants' pilots are expected to be ready to fly at any time of the day or night with little advance warning. They are frequently asked to fly into and out of unfamiliar airports, and, unlike airline pilots, they are required to handle their own weather checking and fuel computations. Under the circumstances, the Defendants are entitled to rely upon the expertise of the Federal Aviation Administration and apply the age 60 rule to their own pilots as a bona fide occupational qualification. *Western Airlines v. Criswell, supra; Gathercole v. Global Associates,*

727 F.2d 1485, 1488 (9th Cir.1984), *cert. denied* — U.S. —, 105 S.Ct. 593, 83 L.Ed.2d 702 (1984).

### 2. *The Expert Testimony.*

■ In *Usery v. Tamiami Trail Tours, Inc., supra,* the Fifth Circuit adopted a two-pronged test for determining the validity of a BFOQ defense in cases in which the duties of the employees concerned involved the safe transportation of passengers. First, the job qualification established by the employer must be reasonably necessary to the safe transportation of passengers. *Usery v. Tamiami Trail Tours, Inc., supra* at 236. Second, the employer must establish either that all or substantially all persons over the age limit would be unable to perform safely and efficiently the duties of the job involved, or that it is impossible or highly impractical to deal with the older employees on an individualized basis. *Usery v. Tamiami Trail Tours, Inc., supra* at 235. The two-pronged test adopted by the Fifth Circuit has recently been specifically approved by the Supreme Court. *Western Airlines v. Criswell, supra,* 105 S.Ct. at 2753. In the instant case, the Court finds that the Defendants have sustained their burden of proving by a preponderance of the evidence that the age limit they have imposed upon corporate pilots is reasonably necessary to the safe operation of corporate aircraft, and that it is impossible or highly impractical to deal with pilots over the age of 60 on an individual basis.

In their case in chief, the Defendants presented the testimony of four expert witnesses with outstanding credentials. Three of the experts were medical doctors;[3] the remaining expert was a psychologist.[4] These experts all testified that aging pilots, in common with all other human beings, experience physiological and psychological deterioration that at some point will affect their ability to fly safely. Furthermore, these experts were unanimous in testifying that a medical and/or psychological ap-

---

**3.** Dr. James Goddard; Dr. William Kannel, and Dr. Charles Billings.

**4.** Dr. Jack Arbit.

praisal system does not yet exist that would be capable of singling out those individual pilots who would pose a safety hazard because of deterioration in health or overall ability to perform

The Plaintiff attempted to counter the Defendants' expert testimony by calling four expert witnesses of its own: three medical doctors[5] and a psychologist.[6] Although the Plaintiff's experts also possessed impressive credentials, the Court found their testimony less convincing than that of the Defendants' experts for a number of reasons. For example, Dr. Mohler admitted that he had personally supported the age 60 rule for pilots while employed by the FAA, but has been "converted" to opposition around 1979. The Court notes that this is approximately the same time that Dr. Mohler became the most popular plaintiffs' witness in age discrimination cases involving the age 60 rule.[7] As another example, the Plaintiff's psychologist, Dr. Hom, agreed in significant respects with the testimony of Dr. Arbit that psychological testing programs do not exist which are capable of determining with accuracy the ability of an individual to fly an airplane. As the finder of fact, the Court is placed in the unenviable but not unusual position of giving some expert testimony greater weight and credit than other expert testimony opposing it. Having weighed the testimony and judged its credibility, the Court finds that the Defendants have carried their burden of establishing by a preponderance of the evidence that it is impossible or at least highly impractical to deal with pilots over 60 years of age on an individualized basis. In reaching this conclusion, the Court is mindful of the statement of the Supreme Court in its opinion in *Western Airlines v. Criswell, supra,* 105 S.Ct. at 2754:

"When an employer establishes that a job qualification has been carefully formulated to respond to documented concerns for public safety, it will not be overly burdensome to persuade a trier of fact that the qualification is 'reasonably necessary' to safe operation of the business. The uncertainty implicit in the concept of managing safety risks always makes it 'reasonably necessary' to err on the side of caution in a close case. The employer cannot be expected to establish the risk of an airline accident 'to a certainty, for certainty would require running the risk until a tragic accident would prove that the judgment was sound.' "

Having concluded that the Defendants have carried their burden of showing that their age 60 rule for corporate pilots is a bona fide occupational qualification, the Court finds that judgment should be entered in favor of the Defendants with respect to the issue of liability. In view of this decision, the bifurcated trial comes to an end, and a hearing on the merits will not be necessary with respect to remedies.

It is therefore ORDERED that judgment be, and it is hereby, entered in favor of the Defendants, and that the Plaintiff take nothing by its suit.

It is further ORDERED that the Plaintiff pay the costs of suit herein incurred.

---

5. Dr. Elliot Snyder; Dr. Stanley R. Mohler, and Dr. Robert A. Bruce.

6. Dr. Jim Hom.

7. Dr. Mohler was the plaintiff's primary expert witness in a number of reported cases. See *e.g., Hoefelman v. Conservation Commission of the Missouri Department of Conservation,* 718 F.2d 281 (8th Cir.1983); *Tuohy v. Ford Motor Co.,* 675 F.2d 842 (6th Cir.1982). Dr. Mohler was also the plaintiff's principal expert witness in the unreported case from this District, *Hamlin v. El Paso Company et al.,* No. MO–79–CA–63 (W.D. Tex.)