Merrill L. WILLIAMS, Frederick L. Riess, Charles E. Hench, Robert G. Ferry and Jack L. Zimmerman, Plaintiffs-Appellants/Cross-Appellees,

v.

HUGHES HELICOPTERS, INC., Defendants-Appellees/Cross-Appellants.

Nos. 85–6418, 85–6428.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1986.

Decided Dec. 24, 1986.

Gregg C. Sindici, San Diego, Cal., for plaintiffs-appellants/cross-appellees.

Ralph S. La Montagne, Jr., Fred J. Meier, Kern and Wooley, Los Angeles, Cal., for defendants-appellees/cross-appellants.

Before GOODWIN, ANDERSON, and SCHROEDER, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Williams, Riess, Hench, Ferry and Zimmerman ("the pilots") appeal from the district court's denial of their several motions for partial summary judgment relative to Hughes Helicopters' ("Hughes") bona fide occupational qualification ("BFOQ") defense to its violation of the Age Discrimination in Employment Act ("ADEA"). The pilots also appeal from the district court's denial of several evidentiary motions.[1]

## I. FACTS

The pilots are former Hughes employees involved in testing new and modified helicopter systems to ensure that the aircraft were safe and to determine if design changes were needed. Ferry, Hench and Zimmerman were experimental test pilots responsible for testing new prototypes or modified existing prototypes. Riess and Williams were production test pilots responsible for testing aircraft that had passed beyond the initial stages of experimental testing.

On April 13, 1982, Hughes adopted a "stop flying" policy requiring experimental test pilots to cease flying at age 55 and production test pilots to cease flying at age 60. The stop flying policy was to become effective on October 1, 1982. On that date, each of the three experimental test pilots in this case was over the age of 55 and each of them were given the option of either transitioning to production test pilot status, accepting a nonflying position, or taking an early retirement. Production test pilots were afforded the latter two of these three options. Each of the pilots involved in this appeal elected to leave Hughes' employment rather than accept one of these options. Each then filed a complaint with the Equal Employment Opportunity Commission.

On April 9, 1984, the district court entered an order finding that Hughes' stop flying policy was a *per se* violation of the ADEA and that such violation had been willful, thereby entitling the pilots to liquidated damages. Hughes raised the affirmative defense that its age limitation was a BFOQ. A jury trial was held on the BFOQ defense and the issue of damages. The jury found that the stop flying poicy was a BFOQ.

## II. DISCUSSION

A. Motions for Partial Summary Judgment

Prior to trial, the district court considered several motions for partial summary judgment relevant to the BFOQ defense. These motions, filed by the pilots, were all denied. The pilots appeal the denial of these motions.

In the first partial summary judgment motion, the pilots argued that the data relied upon by Hughes in adopting the stop flying policy should have been gathered, developed and validated prior to the implementation of that policy. Specifically, the pilots contended that Hughes was precluded, as a matter of law, from relying on the Federal Aviation Administration's

---

1. The pilots further appeal from the district court's denial of their motion for partial summary judgment on the issue of willfulness with its consequent entitlement to liquidated damages. Hughes cross-appeals from the district court's denial of its motion for partial summary judgment on the issue of its offer of reinstatement to the pilots serving to toll any claim of damages. Because we affirm the district court, the jury finding that Hughes had a legitimate BFOQ defense stands and we need not reach either of these issues relating to damages.

("FAA") Age 60 rule[2] and expert testimony developed at trial to validate its stop flying policy because such data had been compiled long after the formulation and implementation of the policy. Our examination of the relevant case law, however, indicates that Hughes could properly rely on the FAA's Age 60 rule and the expert testimony it developed at trial.

In *Gathercole v. Global Associates,* 727 F.2d 1485 (9th Cir.), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 593, 83 L.Ed.2d 702 (1984), this court gave deference to the FAA's Age 60 rule to uphold the forced retirement of a plaintiff pilot. This court noted that the BFOQ asserted by the Army "was not determined by the Army's reliance on its own wisdom as to the reliability of pilots over 60 years of age but on the Army's reliance on the judgment of the FAA as expressed in the FAA formal regulations applicable to 60–year-old airplane pilots of various types." *Id.* at 1488. The employer's BFOQ defense was accepted, despite this court's acknowledgment that it did not "know from the record whether ... the FAA held any hearing in connection with the adoption of this 60–year age regulation.... Nor does the record show whether the regulation was adopted on the basis of evidence, or whether the FAA had before it ... supporting evidence." *Id.* at 1487. This court further stated that "[i]t is sufficient that the Army, knowing of the expertise of the FAA, and its obligation as a public agency to perform its official duty [i.e., to ensure that the evidence before it was sufficient], accepted at face value its ["FAA's] proclaimed standard of necessary minimum qualification." *Id.* at 1488. *See also E.E.O.C. v. El Paso Natural Gas Co.,* 626 F.Supp. 182, 186 (W.D.Tex.1985) (defendants employing private corporate pilots are entitled to rely upon expertise of FAA and apply the Age 60 rule to their pilots as a BFOQ).

In *Hoefelman v. Conservation Com'n of Missouri,* 718 F.2d 281 (8th Cir.1983), a

state agency instituted a stop flying policy for pilots above the age of 60, but "did no independent research in formulating this policy...." *Id.* at 282. Instead it relied solely "on studies of the ... (FAA)." *Id.* Despite this, the Eighth Circuit upheld the district court's finding that age was a BFOQ for pilots employed by the Missouri Department of Conservation.

The Supreme Court has also concluded that the FAA's Age 60 rule is relevant evidence supporting a commercial airline's BFOQ defense in an age discrimination action brought by its flight engineers. *Western Air Lines, Inc. v. Criswell,* 472 U.S. 400, 105 S.Ct. 2743, 2754, 86 L.Ed.2d 321 (1985). *See also El Paso Natural Gas Co.,* 626 F.Supp. at 186.

Case law also supports the introduction and use at trial in the age discrimination context of expert testimony and evidence even if it was not in any way relied upon in implementing the purportedly discriminatory employment policy. In *Hoefelman,* the defendants "established through expert medical evidence [supplied, in part, by Dr. Earl T. Carter who testified on Hughes' behalf in the present case] that it had 'a factual basis for believing that ... some older pilots possess traits precluding safe and efficient job performance unascertainable other than through knowledge of the pilot's age.'" [citations omitted]. *Hoefelman,* 718 F.2d at 286 (McMillian, J., specially concurring). Based on the testimony of expert witnesses at trial, the district court held, and the Eighth Circuit affirmed, that age was a BFOQ. *See also E.E.O.C. v. U. of Texas Health Science Center,* 710 F.2d 1091, 1093–94, 1096–97 (5th Cir.1983) (evidence presented at trial in form of expert testimony supports finding that applicants over 45 are unable to perform their job safely and that it is impossible to deal with persons over 45 on an individualized basis); *El Paso Natural Gas Co.,* 626 F.Supp. at 186 (testimony of four expert witnesses at trial supports finding

**2.** This rule, established by the FAA, requires commercial airline pilots to stop flying at age 60. *See* 14 C.F.R. § 121.383(c) (1986).

that age limit imposed upon corporate pilots is reasonably necessary to the safe operations of corporate aircraft and that it is impractical to deal with pilots over 60 on individualized basis). We agree that expert testimony developed at trial can be used to validate a stop flying policy as a BFOQ. The motion for partial summary judgment was, therefore, properly denied.

In the second motion for partial summary judgment, the pilots argued that Hughes' assertion of a BFOQ defense was precluded by the fact that the pilots were performing efficiently and safely as of the date of their termination. The pilots' argument ignores prevailing law.

■ In order to prevail on a BFOQ defense, an employer need only show that a challenged age qualification is reasonably related to the essential operations of its business. The employer must demonstrate *either* that there is a factual basis for believing that all or substantially all persons above the age limit would be unable to perform safely and effectively the duties of the job, *or* that it is impossible or highly impracticable to determine job fitness on an individualized basis. *E.E.O.C. v. County of Los Angeles*, 706 F.2d 1039, 1042–43 (9th Cir.1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984) (citing *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 235–36 (5th Cir.1976)).

■ The pilots' argument as to their safety and efficiency as pilots ignores the fact that to prevail on its BFOQ defense, an employer need only show that individualized testing of job fitness is impossible or highly impracticable. Applied to the instant action, we note that it is generally accepted that no adequate means currently exist to determine which pilots pose a safety risk due to age-related deterioration in health by testing on an individualized basis. *See Keating v. FAA*, 610 F.2d 611, 613 (9th Cir.1979); *Gray v. FAA*, 594 F.2d 793, 795 (10th Cir.1979); *El Paso Natural Gas Co.*, 626 F.Supp. at 185. As a consequence, the fact that these particular pilots may have been performing efficiently and safely at the time of their termination is irrelevant.

The district court was correct in denying the motion for partial summary judgment based on this argument.

■ Finally, in the last motion for partial summary judgment, the pilots argued that Hughes should have been precluded, as a matter of law, from showing that an age limitation for its pilots was "reasonably necessary to the essence of its business" for the following reasons: (1) Hughes had maintained no prior age policy; (2) it has subsequently rescinded the stop flying policy; (3) it has offered the pilots reinstatement; and (4) an age limitation was not required by any of the other rules governing flight operations at Hughes. Here again, the pilots' contentions miss the mark. Those cases which have examined the stop flying or mandatory retirement policies for pilots have considered whether such policies are reasonably necessary to the essence of the particular business or job involved by focusing on *safety* considerations. *Criswell*, 105 S.Ct. at 2754 n. 29; *Murnane v. American Airlines, Inc.*, 667 F.2d 98 (D.C.Cir.1981), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982); *El Paso Natural Gas Co.*, 626 F.Supp. 182. In *Tuohy v. Ford Motor Co.*, 675 F.2d 842 (6th Cir.1982), the court reversed a summary judgment in favor of a BFOQ but characterized the issue at trial as "whether safety considerations render an Age 60 Rule for [defendants'] pilots reasonably necessary." *Id.* at 846. It is irrelevant to the issue of safety whether or not Hughes had a previous stop flying policy; that it later rescinded that policy; and that it offered to reinstate the pilots to their jobs. Therefore, the pilots' motion for partial summary judgment on whether the age limitation was reasonably necessary to the essence of Hughes' business was properly denied.

■ The pilots further assert that there was not substantial evidence to support the jury's findings that an age limitation was reasonably necessary to the essence of Hughes' business. However, "[i]t is thoroughly established that the sufficiency of

the evidence is not reviewable on appeal unless a motion for a directed verdict was made in the trial court." *United States v. 33.5 Acres of Land,* 789 F.2d 1396, 1400 (9th Cir.1986) (quoting *Trans World Airlines, Inc. v. Shirley,* 295 F.2d 678, 678–79 (9th Cir.1961)). In the present case, the pilots made no motion for a directed verdict at trial. They contend, however, that they qualify for the limited exception to the rule against review of the sufficiency of the evidence in the absence of a motion for a directed verdict. That exception applies only where there is such plain error apparent on the face of the record that failure to review "would result in a manifest miscarriage of justice." *33.5 Acres,* 789 F.2d at 1400. We do not find such plain error on the face of the record presented here. The pilots' failure to make a motion for a directed verdict, therefore, precludes us from reviewing the sufficiency of the evidence.

### B. Evidentiary Motions

Evidentiary rulings are reviewed for an abuse of discretion and will not be reversed absent some prejudice. *Kisor v. Johns-Mansville Corp.,* 783 F.2d 1337, 1340 (9th Cir.1986); *Coursen v. A.H. Robins Co., Inc.,* 764 F.2d 1329, 1333 (9th Cir.1985). Three evidentiary rulings are challenged in this appeal.

First, several days after the close of testimony, the pilots filed a motion to strike all testimony relating to the FAA's Age 60 rule. The pilots claimed that Hughes failed to present relevant, independent evidence validating the Age 60 rule itself as a BFOQ (i.e., showing that the rule applied to Hughes' helicopter test pilots). The district court failed to act on the motion and the pilots now argue that all testimony regarding the rule should have been stricken by the district court. We treat the district court's failure to act on this motion as a denial of it.

The pilots base their motion to strike on the Supreme Court's decision in *Johnson v. Mayor & City Council of Baltimore,* 472 U.S. 353, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985). They attempt to distinguish this case from the Court's decision in *Criswell.* We conclude, however, that although the decision in *Johnson* lends some general support to the pilots' position, the *Criswell* decision is more analogous to the present case.

In *Criswell,* the Court decided that the FAA Age 60 rule is relevant evidence in support of a BFOQ defense if there is sufficient congruity between the occupation at issue and commercial airline pilots and if the weight of the evidence supports a safety rationale. *Criswell,* 105 S.Ct. at 2754. Our review of the record presented here leads us to find that there is sufficient congruity between the occupations of commercial airline pilots (upon which the Age 60 rule is based) and helicopter test pilots. We also find that the weight of the evidence supports a safety rationale. Therefore, we hold that the district court did not abuse its discretion in denying the motion to strike all testimony regarding the FAA rule.

Second, Hughes made a motion to exclude two internal legal memoranda which had been produced during discovery. The memoranda set forth detailed legal analyses of the BFOQ defense as applied to Hughes. The district court granted the motion to exclude. It concluded that the memoranda were not relevant, and that even if they were marginally relevant, they were excludable under Federal Rule of Evidence 403 since their probative value was substantially outweighed by the dangers of unfair prejudice, confusion of issues, or misleading of the jury.

Our review of these documents leads us to find that the district court did not abuse its discretion in excluding the documents for the reasons given. As the document addressed legal issues, there was strong potential for a jury to ignore the court's instructions on the law and place too much weight on the memoranda.

Third, the pilots filed a motion *in limine* to exclude from evidence the videotaped deposition testimony of one of Hughes' expert witnesses, Dr. Earl T. Carter. His testimony had been taken a month prior to trial, but he was unavailable

at the time of trial. The district court denied the motion.

Fed.R.Civ.P. 32(a) provides that:

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition....

Hughes offered uncontested evidence that Dr. Carter was in Australia at the time of trial and would not return until after the trial ended. The district court, therefore, did not abuse its discretion in denying the motion *in limine* to exclude Dr. Carter's videotaped deposition testimony.

The district court's denials of the evidentiary motions and the motions for partial summary judgment are

AFFIRMED.