EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION,
Plaintiff–Appellant,

v.

The BOEING COMPANY,
Defendant–Appellee.

No. 86–3754.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1987.

Decided April 6, 1988.

Susan Elizabeth Rees, Atty., E.E.O.C., Washington, D.C., for plaintiff-appellant.

John F. Aslin, Perkins Coie, Michael C. Hallerud, Seattle, Wash., for defendant-appellee.

Before BROWNING, Chief Judge, WRIGHT and HALL, Circuit Judges.

JAMES R. BROWNING, Chief Judge:

The Equal Employment Opportunity Commission brought suit under the Age Discrimination in Employment Act of 1976 (ADEA), 29 U.S.C. §§ 621–634, challenging the Boeing Company's practice of removing pilots from active flight duty at age 60. Boeing admitted discriminating on the basis of age but defended on the ground that being less than 60 is a bona fide occupational qualification (BFOQ) for Boeing pilots.[1] Boeing moved for summary judgment, relying entirely upon the argument that a Federal Aviation Administration (FAA) regulation prohibiting commercial airline pilots from flying after reaching age 60[2] provided a BFOQ for Boeing pilots as a matter of law. The district court agreed. *EEOC v. Boeing Co.*, 40 Fair Empl. Prac. Cas. (BNA) 292 (W.D.Wash.1986).

We believe the evidence offered by EEOC raised genuine issues of fact that required trial, particularly in light of Congress's expressed preference for jury determination of factual issues arising under ADEA. We therefore reverse.

## I

The district court correctly concluded (*id.* at 293) that to establish a BFOQ for Boeing pilots, the burden rested upon Boeing to prove by a preponderance of the evidence: 1) that the job qualification justifying the discrimination is reasonably necessary to the essence of its business; and 2) that age is a legitimate proxy for the qualification because (a) it has a "substantial basis for believing that all or nearly all employees over an age lack the qualification," or (the alternative chosen by Boeing) (b) it is impossible or "highly impractical for [it] to insure by individual testing that its employees will have the necessary qualifications for the job." *See Western Air Lines v. Criswell*, 472 U.S. 400, 416–17, 422–23, 105 S.Ct. 2743, 2752–53, 2755–56, 86 L.Ed.2d 321 (1985); *Williams v. Hughes Helicopters, Inc.*, 806 F.2d 1387, 1391 (1986); 29 C.F.R. § 1625.6(b) (1987).

The district court noted that FAA's Age–60 Rule may be relevant evidence of a BFOQ for Boeing pilots if the regulation is based on the same considerations that would support determination of a BFOQ under ADEA. The court observed that the probative weight of the FAA rule depends upon "the degree to which the job performed by Boeing pilots is congruent to that performed by commercial airline pilots." *Id.* at 294 (citing *Johnson v. Mayor and City Council of Baltimore*, 472 U.S. 353, 371, 105 S.Ct. 2717, 2727, 86 L.Ed.2d 286 (1985), and *Western Air Lines*, 472 U.S. at 418, 105 S.Ct. at 2753–54.

---

**1.** Age discrimination otherwise prohibited by the ADEA is exempt from the Act "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business...." 29 U.S.C. § 623(f)(1).

**2.** 14 CFR § 121.383(c) (1987) provides:

No [commercial airline operating under Part 121] may use the services of any person as a pilot on an airplane engaged in operations under this part if that person has reached his 60th birthday. No person may serve as a pilot on an airplane engaged in operations under this part if that person has reached his 60th birthday.

In granting summary judgment, the court focused on (1) the relevance and (2) the probativeness of FAA's Age–60 Rule. To determine the relevancy of FAA's Age–60 Rule, the court examined the findings by FAA upon which the rule was based: namely, that progressive deterioration occurs with age; that sudden incapacity becomes significantly more frequent after age 60; that the risk of such incapacity could not be gauged adequately except by reference to age; and therefore that the Age–60 Rule was necessary for safety of air carriers. *Id.* at 294. The district court noted that FAA had reexamined and reaffirmed the Age–60 Rule in 1972 and 1984 on the basis of renewed findings that advanced age may adversely affect pilot safety, and that tests were not yet available that would reliably predict such adverse effects in individual cases. *Id.* at 295. The court concluded that "because the FAA regulation is based on considerations that would support a BFOQ, the regulation may establish a BFOQ for jobs similar to that of an airline pilot." *Id.* Whether the regulation does establish a BFOQ for such jobs, the court said, would depend on the probativeness of the regulation. *Id.*

In assessing the probativeness of FAA's Age–60 Rule in determining a BFOQ for Boeing pilots, the district court considered the strength of the evidence upon which the Rule was based, the expertise of FAA, the standards applied by FAA in adopting the Age–60 Rule, and how current the FAA regulation was. *Id.* at 295. The court found that the evidence FAA considered was "more than sufficient to establish prima facie evidence of a factual basis for a BFOQ" (*id.* at 296); that the "specialized knowledge and resources" of FAA and the National Institute on Aging (which concurred in FAA's Age–60 Rule) "render[ed] efforts by a court to reexamine the identical issues an unwarranted duplication of expert testimony" (*id.*); that the standard applied by FAA—that the age limitation be reasonable and necessary for safety—was consistent with the standard required to establish a BFOQ for pilots (*id.* at 296–97); and that FAA had reaffirmed the rule less than two years earlier. *Id.* at 297. Final-

ly, the court compared the functions of commercial airline and Boeing pilots and concluded:

> that for purposes of establishing a BFOQ the job performed by Boeing pilots is almost perfectly congruent with that performed by airline pilots. The FAA age limitation is based on safety concerns, and the flying done by Boeing pilots raises the same safety concerns as that done by airline pilots. Specifically, Boeing pilots fly large, fast aircraft in crowded air space. The significant peculiarities of Boeing flights entail even greater demands on a pilot's cognitive and psychomotor abilities than he would experience on commercial flights.

*Id.* at 297–98.

The court concluded that the FAA Rule "is essentially conclusive evidence" that being less than 60 is a BFOQ for Boeing pilots. *Id.* at 294. The court explained: "[T]he FAA regulation, 14 CFR § 121.383(c), coupled with the background of the regulation and the congruity of the relevant pilot positions, establishes a BFOQ defense for Boeing as a matter of law.... Boeing is entitled to rely on the conclusions of the FAA.... Boeing need not re-prove these same conclusions.... [A]ny inquiry by a court into the issues already addressed by the FAA would be redundant and wasteful." *Id.* at 298.

In sum, the district court read *Johnson* and *Western Air Lines* to mean that if the considerations upon which FAA based the Age–60 Rule for commercial airline pilots would also support an age–60 limitation as a BFOQ for Boeing pilots, if the evidence before FAA supporting the Age–60 Rule for commercial airline pilots was substantial, and if the occupations of commercial airline pilots and Boeing pilots were sufficiently alike, the court could treat FAA's Age–60 Rule as conclusive as a matter of law of the existence of an age–60 BFOQ for Boeing pilots. Having found the underlying considerations the same, the evidence before FAA substantial, and the occupations congruent, the district court did not consider the Commission's extensive evidentiary showing that disqualifying impair-

ments in persons over 60 can be determined on an individual basis by scientific testing. Instead, because FAA's Age–60 Rule met the court's tests for relevancy and probativeness, the court held that Boeing was entitled to summary judgment and "[a]ny issues of fact raised by [the Commission] are not material." 40 FEP at 298. On the same ground, the court denied the Commission's motion for further discovery on several subjects clearly relevant to the merits of Boeing's age–60 Rule as a BFOQ for its pilots.

## II

The validity of a BFOQ turns upon factual findings, preferably ones by a jury. It was "Congress' indisputable intent to permit deviations from the mandate of the ADEA only in light of a particularized, factual showing...." *Johnson*, 472 U.S. at 362, 105 S.Ct. at 2722 (citations omitted). Congress coupled its preference for individualized examination of proffered justifications for age discrimination with a preference for resolution of such issues by a jury: "Congress expressly decided that problems involving age discrimination in employment should be resolved on a 'case-by-case basis' by proof to a jury." *Western Air Lines*, 472 U.S. at 422, 105 S.Ct. at 2756 (citing H.R.Rep. No. 805, 90th Cong., 1st Sess. 7 (1967), U.S.Code Cong. & Admin.News 1967, 2213, *reprinted in* EEOC, Legislative History of the Age Discrimination in Employment Act 80 (1981)).

The critical issue of fact in this case was the detectability on an individual basis of deterioration in a Boeing pilot aged 60 or over that might diminish that pilot's capacity to discharge safely his or her duties. This was an issue for the jury to decide if the facts were disputed, or for the court to decide if they were not.

Since the matter was before the district court on Boeing's motion for summary judgment, the court was required to deny the motion unless in view of the whole record—including FAA's Age–60 Rule, the evidence considered by FAA, and the expert opinions and other evidence offered by the Commission—no reasonable jury could have decided that it was practical to test pilots age 60 and over for disabling conditions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986).

As we have noted, Boeing did not offer independent proof that it was "highly impractical" to determine by testing whether particular individuals aged 60 or over possessed traits precluding safe and efficient performance as pilots. Instead Boeing relied upon FAA's Age–60 Rule and the evidence upon which FAA based that rule. This evidence included expert opinions on both sides of the issue of the adequacy of modern testing techniques; the district court made no effort to resolve the conflict. Moreover, the Commission submitted an additional showing of recent expert opinion indicating newly developed scientific techniques permitted accurate prognosis on an individual basis of actual or potential loss of function; the district court did not consider this evidence.

In addition to the opinions of experts, the Commission offered evidence that Boeing did not adopt its age–60 policy until 1980, and prior to that time employed pilots beyond age–60 without incident; that there was no evidence that any Boeing pilot had suffered an incapacitating condition during flight; that FAA had not chosen to require early retirement of its own pilots or of the many pilots not covered by Part 121 of FAA regulations; that the Navy had adopted but thereafter rescinded an age–60 rule for Navy pilots; that FAA and Boeing and other airlines have developed elaborate testing procedures to detect health problems among pilots on an individualized basis and have relied upon these procedures to recertify pilots grounded for potentially dangerous conditions such as alcoholism or cardiovascular disease.[3]

---

**3.** Evidence of this kind has been considered relevant to the BFOQ issue in a number of cases. *See, e.g., Western Air Lines*, 472 U.S. at 404, 407, 423, 105 S.Ct. at 2746, 2748, 2756;

*Iervolino v. Delta Air Lines, Inc.*, 796 F.2d 1408, 1412, 1417 (11th Cir.1986); *Criswell v. Western Air Lines*, 709 F.2d 544, 551–52 (9th Cir.1983), *aff'd* 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d

The district court regarded this evidence as irrelevant because it found the evidence considered by FAA in adopting the Age–60 Rule for commercial pilots "more than sufficient to establish prima facie evidence of a factual basis for a BFOQ," and accordingly granted summary judgment for Boeing. 40 FEP at 296. The Court treated FAA's Age–60 Rule as if it were an administrative determination of a BFOQ for Boeing pilots entitled to deferential review. There are two problems with this approach. First, it vests in FAA control and basic responsibility for resolving factual issues in determining a BFOQ. Secondly, it treats the problem of determining a BFOQ for Boeing pilots as if it were the same as determining a BFOQ for the pilots to whom FAA's Age–60 Rule applies.

321 (1985); *EEOC v. County of Los Angeles,* 706 F.2d 1039, 1043 (9th Cir.1983); *Tuohy v. Ford Motor Co.,* 675 F.2d 842, 843 (6th Cir.1982); Case Note, 36 Drake L.Rev. 213, 234 (1986–87).

4. Individualized case-by-case evaluation of each employee is the underlying principle of administration under ADEA. *Western Air Lines,* 472 U.S. at 411, 105 S.Ct. at 2750. Because the BFOQ defense substitutes a blanket rule for individual evaluation, it is "'an extremely narrow exception'" to the statute's general principle. *Id.* at 412, 105 S.Ct. at 2750–51 (quoting *Dothard v. Rawlinson,* 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977)). "Under the Act, employers are to evaluate employees between the ages of 40 and 70 on their merits and not their age. In the BFOQ defense, Congress provided a limited exception to this general principle...." *Id.* at 422, 105 S.Ct. at 2756. To accord FAA's Age–60 Rule conclusive or presumptive status might lead to the validation of age discrimination beyond the narrow confines of the BFOQ exception, particularly in view of the difference in the standards applied under ADEA and the Federal Aviation Act. See *infra* pp. 1220–1221.

5. In *Johnson* the Court looked first to whether a statutory provision establishing an age limitation for federal firefighters reflected "a congressional determination that age 55 is a BFOQ within the meaning of the ADEA, ... or whether Congress established the mandatory retirement age based on an analysis different from that mandated by the BFOQ standard." 472 U.S. at 363, 105 S.Ct. at 2722–23. It concluded that the provision did not "articulate a BFOQ...." *Id.* at 370, 105 S.Ct. at 2726. The Court then discussed the effect a congressional determination that age *was* a BFOQ for certain federal occupations would have had on use of age as a BFOQ in nonfederal occupations. The

A.

█ The statute vests responsibility for determining the validity of a BFOQ in the courts. In the exercise of that responsibility a court may consider relevant factfinding by Congress or by an executive agency, but the court may not abdicate its factfinding function to either of the other branches. No authority called to our attention justifies deference to an agency determination in the administration of ADEA.[4] It is clear from both *Johnson* and *Western Airlines* that FAA's conclusions and the record from which they were drawn are no more than evidence for the court to consider in arriving at a judicial decision as to the merits of Boeing's BFOQ defense.[5]

Court said, "[i]t might be that congressional findings leading to the conclusion that age is a BFOQ for a certain federal occupation would be of *relevance* to a judicial inquiry...." *Id.* at 366 n. 10, 105 S.Ct. at 2724 n. 10 (emphasis added). This relevance, the Court explained, "derives from a recognition that Congress might already have engaged in the same inquiry that *a district court must make,* and *a district court might find* congressionally gathered evidence *useful* and congressional factfinding *persuasive."* *Id.* (emphasis added). The Court continued:

> [I]f Congress expressly extended the BFOQ to nonfederal occupations, that determination would be dispositive. But if it did not, the federal exemption nevertheless might be relevant ... to a district court engaged in reviewing an employer's BFOQ defense. *The evidence Congress has considered, and the conclusions it has drawn therefrom, might be admissible as evidence in judicial proceedings to determine the existence of a BFOQ for nonfederal employees. The extent to which these factors are probative would, of course, vary depending at least on the congruity between the federal and nonfederal occupations at issue....* Because in this case the evidence supports no such finding of congressional intent to establish a BFOQ, however, we decline to speculate on the manner in which a different federal rule might affect nonfederal employment.

*Id.* at 370–71, 105 S.Ct. at 2726–27 (emphasis added).

The opening comment that a Congressionally adopted BFOQ would be "dispositive" refers to a legislative determination reflected in a statute— such a statutory directive would be controlling, of course. But the Court clearly stated that when an age limitation which is not legislatively mandated is offered in support of a BFOQ defense, the evidence received by Congress and

 In view of the disputed questions of material facts relating to the detectability of disqualifying impairments by individual testing, trial was required. As the Eleventh Circuit recently stated, "[c]ases which rely heavily on expert testimony, as is the case here, do not easily lend themselves to summary judgment. Indeed most of the public safety age discrimination cases seem to have been resolved at trial." *Childers v. Morgan County Bd. of Educ.,* 817 F.2d 1556, 1559 (11th Cir.1987) (per curiam).[6] In *Childers,* summary judgment was reversed and the issue of feasibility of individualized testing remanded for trial largely because of conflicts in medical opinion testimony. *See also Tuohy v. Ford Motor Co.,* 675 F.2d 842 (6th Cir.1982); *EEOC v. County of Santa Barbara,* 666 F.2d 373 (9th Cir.1982).

*Western Air Lines* is compelling authority that a trial is necessary. In *Western Air Lines,* as in this case, the employer relied upon FAA's Age–60 Rule to establish a BFOQ for an occupation other than piloting commercial flights—flight engineers. Western requested an instruction that the jury might rely on FAA's Age–60 Rule for commercial carrier pilots to establish a BFOQ for flight engineers "without considering any other evidence." 472 U.S. at 417, 105 S.Ct. at 2753. The Supreme Court held that FAA's rule was relevant evidence, but "is not to be accorded conclusive weight." *Id.* at 418, 105 S.Ct. at 2753–54. The Court approved submission to the jury of the evidence of the adequacy of individualized testing, including expert opinion on that subject. *Id.* at 422, 105 S.Ct. at 2756.

As the opinion of this circuit in the *Western Air Lines* case reveals, Western objected to instructions which imposed upon Western the burden of showing it was highly impractical to determine on an individualized basis the ability of a particular flight engineer over 60 to perform the job safely, and that some flight engineers possess traits precluding safe job performance which cannot be detected other than by age. *Criswell v. Western Airlines, Inc.,* 709 F.2d 544, 549–50 (9th Cir.1983). Western argued that "it should not have been required to reconstruct what it calls 'the medical rationale underlying the FAA's Age–60 Rule.'" *Id.* at 550. We held that the issue was properly submitted to the jury, and that the jury's verdict rejecting the BFOQ defense had substantial evidentiary support, including expert testimony "that present-day diagnostic techniques and the current level of medical knowledge make possible individual determinations" of the capacity of second officers over 60 to perform safely. *Id.* at 551–52.

The Supreme Court in *Western Air Lines* forcefully rejected the argument, made again by Boeing in this case, that juries are ill-equipped to resolve disputes between experts over highly technical medical questions:

Western argues that ... medical disputes can never be proved "to a certainty" and ... juries should not be permitted "to resolve bona fide conflicts among medical experts respecting the adequacy of individualized testing." ... The jury, however, need not be convinced beyond all doubt that medical testing is impossi-

---

the conclusions Congress has drawn are not conclusive in the judicial proceeding, but only admissible as evidence.

In *Western Air Lines,* the Supreme Court applied the reasoning of *Johnson* to the question of the proper use of FAA's Age–60 Rule in resolving a BFOQ defense in an ADEA suit: "Although the FAA's rule for pilots, adopted for safety reasons, is *relevant evidence* in the airline's BFOQ defense, it is *not to be accorded conclusive weight.*" 472 U.S. at 418 (emphasis added).

**6.** The Eleventh Circuit cited *Iervolino v. Delta Air Lines, Inc.,* 796 F.2d 1408 (11th Cir.1986); *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224

(5th Cir.1976); *Maki v. Commissioner of Educ. of State of N.Y.,* 568 F.Supp. 252 (N.D.N.Y.1983) *aff'd mem.,* 742 F.2d 1437 (2d Cir.1984). To this list may be added *Western Air Lines,* 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321; *Hahn v. City of Buffalo,* 770 F.2d 12 (2d Cir.1985); *Hoefelman v. Conservation Comm'n of Mo.,* 718 F.2d 281 (8th Cir.1983); *EEOC v. University of Tex. Health Science Center,* 710 F.2d 1091 (5th Cir. 1983); *EEOC v. County of Los Angeles,* 706 F.2d 1039 (9th Cir.1983); *Orzel v. City of Wauwatosa Fire Dept.,* 697 F.2d 743 (7th Cir.1983); *Tuohy v. Ford Motor Co.,* 675 F.2d 842 (6th Cir.1982) (remanded for trial).

ble, but only that the proposition is true "on a preponderance of the evidence." Moreover, Western's attack on the wisdom of assigning the resolution of complex questions to 12 lay-persons is inconsistent with the structure of the ADEA. Congress expressly decided that problems involving age discrimination in employment should be resolved on a "case-by-case basis" by proof to a jury. 472 U.S. at 422, 105 S.Ct. at 2756. (citations and footnote omitted).[7]

We have considered the cases relied upon by Boeing and find them unpersuasive.

Cases sustaining FAA's Age–60 Rule and FAA's refusal to grant exceptions to it decided no more than that the litigants opposing these actions of the agency had failed to carry their burden of showing FAA acted beyond its rulemaking and regulatory authority, without substantial evidence, or in abuse of its discretion.[8] Obviously, rulings favorable to FAA on those issues have little relevance here.[9]

Boeing argues that our decisions in *Williams v. Hughes Helicopters, Inc.,* 806 F.2d 1387 (9th Cir.1986) and *Gathercole v. Global Associates,* 727 F.2d 1485 (9th Cir. 1984), "compel affirmance" in this case. Boeing argues that *Hughes* confirms the district court's position that if substantial evidence supports the safety rationale of FAA's Age–60 Rule, and there is sufficient congruity between the occupations of commercial airline pilots and Boeing pilots, then the FAA rule establishes a BFOQ for Boeing pilots as a matter of law. This is not the holding of *Hughes.* In that case a jury found an age limitation imposed by Hughes to be a BFOQ for Hughes helicopter pilots. The pilots' appeal asserted error in the denial of motions for summary judgment by which the pilots had sought to prevent Hughes from relying on FAA's Age–60 Rule and expert testimony developed at trial. The Hughes pilots argued that pilots who were terminated by Hughes were performing safely when they were terminated, that Hughes had no age policy prior to initiating the limitation at issue, that Hughes had not imposed the policy on all of its pilots, and that Hughes had subsequently rescinded the policy and offered to reinstate pilots terminated under the policy. We sustained the district court's rulings that both FAA's Age–60 Rule and expert testimony were admissible in support of Hughes' BFOQ defense. *See Hughes,* 806 F.2d at 1389–91. We did not hold FAA's regulations to be conclusive. *Id.* at 1392. Indeed, we did not hold it to be substantial evidence sufficient to support the jury's verdict that the age limitation was necessary to the essence of Hughes' business—review of that issue was precluded by failure of the Hughes pilots to move for a directed verdict, and we held only that the jury's verdict sustaining the BFOQ defense was not "plain error." *Id.*

Nor is *Gathercole* controlling. We held in *Gathercole* that FAA's Age–60 Rule constituted a BFOQ for pilots employed by an

---

7. The Second Circuit responded in similar terms to the argument that case-by-case determinations will lead to inconsistent results:

 It seems somewhat anomalous for the lawfulness of maximum age limits on police hiring to depend on the particular evidence presented at various court trials throughout the country.... Nevertheless, the ADEA accords each person between 40 and 70 the right to challenge an adverse employment decision based on age and thereby obligates each employer to defend such challenges in separate actions, despite the application of the same age limit to similar or even identical occupations in different communities. Moreover, Congress has not provided for agency determination of whether a particular age is a BFOQ for a particular occupation. The District Court was therefore obliged to undertake the extensive inquiry it made, and our task is limited to determining whether its findings are clearly erroneous and whether relevant legal standards were correctly applied.

 *Hahn v. City of Buffalo,* 770 F.2d 12, 15–16 (2d Cir.1986) (citations omitted).

8. *Keating v. Fed. Aviation Admin.,* 610 F.2d 611, 613 (9th Cir.1979); *Rombough v. Fed. Aviation Admin.,* 594 F.2d 893, 899–900 (2d Cir.1979); *Gray v. Fed. Aviation Admin.,* 594 F.2d 793, 795 (10th Cir.1979); *Starr v. Fed. Aviation Admin.,* 589 F.2d 307, 311–14 (7th Cir.1978); *O'Donnell v. Shaffer,* 491 F.2d 59, 62–63 (D.C.Cir.1974); *Air Line Pilots Ass'n, Int'l v. Quesada,* 276 F.2d 892, 898 (2d Cir.1960).

9. These cases are distinguished from age discrimination suits under ADEA in *Keating,* 610 F.2d at 613; *Rombough,* 594 F.2d at 898–99; and *Starr,* 589 F.2d at 313–14.

Army contractor to fly passengers between points in the Marshall Islands on behalf of the Army. The employer in *Gathercole* was required by its contract with the United States Army to comply with FAA's Age–60 Rule. Boeing is under no such contractual obligation in this case. The two other assumptions relied upon in *Gathercole* are no longer available: (1) we said the Army was entitled to rely on the FAA Rule, Global by its contract was required to do so, and the FAA Rule therefore afforded Global BFOQ protection (*Gathercole*, 727 F.2d at 1488), but treatment of the FAA Rule as conclusive evidence of a BFOQ defense was subsequently rejected in *Western Air Lines*, 472 U.S. at 418, 105 S.Ct. at 2753–54; (2) we relied on the fact that the regulations interpreting section 4(f)(1) of ADEA listed FAA's Age–60 Rule as illustrative of an appropriate BFOQ, but the Commission subsequently amended its regulations to delete this reference to the FAA Rule to avoid the appearance that it approved the FAA Rule as a BFOQ.

### B.

■ Even accepting the district court's premise that exclusive reliance on FAA's Age–60 Rule in determining a BFOQ might be appropriate if the underlying considerations were the same and the occupations sufficiently similar, the record in this case did not demonstrate the existence of either condition. There is serious doubt that the FAA Rule reflects a determination by FAA that age 60 is a BFOQ as defined by ADEA for the commercial pilots to whom it applies, much less a BFOQ for Boeing pilots. Although FAA's Age–60 Rule has been sustained as a proper exercise by FAA's rule-making and regulatory power, it has never been tested against ADEA's requirements for a BFOQ even for the commercial pilots. EEOC has referred to FAA's Age–60 Rule as "controversial" and declined to include it as an example of an appropriate BFOQ under ADEA. See 46 Fed.Reg. 47725 (1981); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 123 n. 17, 105 S.Ct. 613, 622 n. 17, 83 L.Ed.2d 523 (1985).

FAA's Age–60 Rule applies only to pilots who fly for air carriers operating under Part 121 (generally airlines operating large passenger-carrying aircraft). 14 C.F.R. §§ 121.1, .38 (1987). It is inapplicable to pilots who operate large jet aircraft which may carry passengers in non-Part 121 operations, such as corporate pilots, flight instructors or pilots who ferry planes, or FAA's own pilots, or to commercial airline pilots who operate smaller aircraft regulated under other parts of FAA's regulations. *See* 14 CFR § 135.243. If FAA's Age–60 Rule were a BFOQ, presumably the safety justification for the Rule would compel its application at least to all commercial airline pilots, and to all pilots operating the types of aircraft covered by Part 121, regardless of which regulation governs the operation. Yet, FAA has rejected recommendations from the National Transportation Safety Board and the National Institute of Health that the Rule be extended to other commercial flight operations. *See* Report of the National Institute on Aging Panel on Experienced Pilots Study 2 (August 1981).

ADEA requires that a BFOQ be "reasonably necessary to the essence of the business." 29 C.F.R. § 1625.6(b). In contrast, the standard underlying FAA's Age–60 Rule requires "the highest possible degree of safety in the public interest...." 49 U.S.C. § 1421(b) (1982), and may be more hospitable to discrimination in the interests of safety than ADEA's standard for a BFOQ. It may be that the Age–60 Rule reflects an FAA decision to resolve any doubts about the necessity for an age qualification in favor of the substantial number of passengers carried by Part 121 carriers. Whatever the reason, it cannot be assumed that the concerns that led FAA to adopt the Age–60 Rule for the particular group of commercial pilots flying aircraft regulated under Part 121 are equally applicable to determining a BFOQ based on age 60 for Boeing pilots.

The record also falls short of establishing that the tasks performed by the various categories of Boeing pilots have the same characteristics for BFOQ purposes as those performed by the pilots to whom FAA's Age–60 Rule applies.

The district court recognized that on "many fine points" there was a conflict in the evidence relating to the similarities and differences, and found only that "the *un-*

*disputed* portions of the evidence [were] sufficient to indicate that in many important respects Boeing pilots perform a job that is similar to the job performed by airline pilots." 40 FEP at 297 (emphasis in original). The evidence was that Boeing's pilots are assigned to a Flight Crew Training Unit (41 pilots), an Engineering Test Flight Unit (10 pilots), or a Production Test Flight Group (14 pilots). Boeing furnished descriptions of the general characteristics of the flying tasks of pilots in each of these units. On the basis of this evidence, the court concluded the jobs of pilots in all three groups were "almost perfectly congruent" with the job of commercial airline pilots, because both Boeing pilots and commercial pilots fly the same kind of aircraft, fly in the same air space, fly in and out of the same airports, and execute similar maneuvers under conditions that are equally demanding. *Id.*

This level of proof and analysis is too general to satisfy the purposes of ADEA. It is evident from the broad description of the three job classifications that the tasks performed by Boeing pilots encompass a wide range of physical and psychological demands, and a wide range of risks of harm to the pilots and to others if an accident occurs. Some may perform jobs similar to those of commercial pilots; others rather clearly do not. For example, a significant portion of the time of pilots in the largest Boeing Unit (the Flight Crew Training Unit) was devoted to training other pilots—a task that on its face does not appear to present as much stress or as grave a safety risk as that associated with carrying the primary responsibility for operating the aircraft as commercial pilots do. Some Boeing pilots perform especially demanding and dangerous experimental and engineering flights; commercial pilots

do not. All pilots subject to FAA's Age–60 Rule fly planes carrying passengers or property for hire; some Boeing pilots carry passengers, but most do not. Boeing contended all of its pilots carried heavy workloads; EEOC offered evidence that only a small percentage of the working hours of some Boeing pilots was spent in flying; no evidence was offered as to the flying hours of commercial airline pilots.

■ The district court found these differences unimpressive, commenting, for example, that some Boeing pilots flew no passengers was of "no great significance." 40 FEP at 298. However, this and other differences between the tasks of commercial pilots and different classifications of Boeing pilots were relevant to the weight of FAA's Age–60 Rule as evidence of a BFOQ *for different classifications of Boeing pilots.* Among other things, "the greater the safety factor, measured by the likelihood of harm and the probable severity of that harm in case of an accident, the more stringent may be the job qualifications designed to insure safe driving." *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224, 236 (5th Cir.1976) (quoted with approval in *Western Air Lines,* 472 U.S. at 413, 105 S.Ct. at 2751); *see also Tuohy,* 675 F.2d at 844-45. The level of safety required in a particular job category is also relevant to the degree of reliability required of testing procedures to detect individual deterioration due to aging.[10]

### III

Approximately two months after Boeing filed its motion for summary judgment, the Commission moved to amend its complaint to add an allegation that Boeing's age–60 rule "results in [Boeing's pilots'] forced lay-off or retirement, loss of work, loss of

---

**10.** Similarly, the district court dismissed the statements of two Boeing pilots that they spent as little as 6.25% and 12.6% of their working hours actually flying an airplane, remarking that flying still "remains the essence of a Boeing pilot's job," as it is of the job of a commercial pilot, because all Boeing pilots are required to fly and qualify for their other tasks largely because of their flying experience. 40 FEP at 298. The court added that Boeing's age–60 rule only required a pilot to leave active flight status at 60, but "not necessarily [ ] to leave Boeing alto-

gether." *Id.* Since "this case concerns pilots only as flyers of airplanes[,]" the court said, "the additional tasks Boeing pilots may be required to perform are irrelevant." *Id.* However, the extent to which Boeing pilots in a particular job category are engaged in flying, both relative to the Boeing pilots in other job categories and relative to commercial pilots, bore upon the stress, risk, and degree of assurance against age deterioration necessary to the essence of Boeing's business, and was significant to the probative value of FAA's regulation.

compensation and benefits, and forced participation in defendant's Pilot Terminal Leave or Pilot Early Leave programs." The Commission argued the amendment was necessary to "clarify that the consequences of Boeing's age–60 flight removal policy had always been part of the law suit." The Commission also argued it was necessary to "amplify" its allegations because "[a]s the suit progressed, the commission learned that not only were few Boeing pilots at age 60 offered alternative employment, but that what was offered was temporary."

The district court denied the motion stating that insofar as the amendment was only clarifying, it was unnecessary, and to the extent it "would append to this law suit an entirely new inquiry into layoff and retirement practices at Boeing, the amendment is unduly late."

To the extent the proposed amendment was intended to clarify the complaint, it is now the law of this case that the Commission will be permitted to discover and present evidence of the alleged consequences of Boeing's retirement policy as an element of damages under the present pleadings. To this extent, therefore, denial of the motion did not prejudice the Commission.

 To the extent the motion alleged the consequences of Boeing's age–60 rule as an independent violation of ADEA, it was not an abuse of discretion to deny it. "Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied." *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir.1982), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

The Commission's claim that it learned of the consequences of the age–60 rule as actually applied by Boeing only during the pendency of the litigation is not convincing. Before filing suit, the Commission interviewed many Boeing pilots over the course of several years regarding Boeing's retire-

ment practices. Indeed, the complaint as filed included an allegation that Boeing unlawfully forced pilots to retire from all work solely because of age. The Commission amended its complaint at the commencement of discovery to omit this allegation and confine the complaint to removal of pilots from flight duties. As a result discovery was similarly confined. The district court did not abuse its discretion in finding that Boeing would be prejudiced by the restoration of the new cause of action in these circumstances. *See Acri v. International Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398–99 (9th Cir. 1986) ("late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.")[11]

The denial of leave to amend is affirmed. The summary judgment is reversed and the cause remanded for further proceedings. REVERSED and REMANDED.

---

**11.** The district court is free, of course, to reconsider the motion to amend in light of the changed circumstances resulting from this appeal.