**Robert J. COUPÉ, Plaintiff–Appellant,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant–Appellee.**

No. 96–5978.

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1997.

Decided Aug. 4, 1997.

Nicholas H. Cobbs (argued and briefed), Law Offices of Nicholas H. Cobbs, Washington, DC, for Plaintiff–Appellant.

James R. Mulroy, II (argued and briefed), Federal Express Corporation, Memphis, TN for Defendant–Appellee.

Before: KRUPANSKY, NELSON, and BOGGS, Circuit Judges.

## OPINION

DAVID A. NELSON, Circuit Judge.

Except where age is a bona fide occupational qualification reasonably necessary to the normal operation of an employer's business, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, prohibits the employer from discharging an individual because of his age. See 29 U.S.C. § 623(a)(1) and (f)(1). Federal law also prohibits any air cargo operator regulated by the Federal Aviation Administration under Part 121 of the Code of Federal Regulations from using the services of a pilot who has reached his 60th birthday. See 14 C.F.R. § 121.383(c).

Where an employer is subject to the FAA rule, does the ADEA prohibit the employer from discharging a pilot because he has turned 60? Concluding that as a matter of law the obligation to comply with the FAA's age 60 rule gives rise to a bona fide occupational qualification reasonably necessary to the normal operation of such an employer's business, the district court answered this question "no." The court gave the correct answer, in our view.

### I

The defendant in this case, Federal Express Corporation, operates aircraft used to carry cargo for hire. The company's operations are regulated by the FAA under 14 C.F.R. Part 121.

The plaintiff, Robert J. Coupé, was employed by Federal Express as a professional pilot. Six months before his 60th birthday he told Federal Express that he wanted to

continue working in his current job (he was a captain at the time) after he turned 60. Federal Express told him that he could not do so. The company gave him a choice between retiring at 60 or training for a lower-paying position as a flight engineer. (The FAA has not established a mandatory retirement age for flight engineers. See *Western Air Lines, Inc. v. Criswell,* 472 U.S. 400, 404, 105 S.Ct. 2743, 2746, 86 L.Ed.2d 321 (1985).)

Mr. Coupé promptly filed an age discrimination charge with the Equal Employment Opportunity Commission. The EEOC dismissed the charge a few weeks later, noting that Federal Express was acting "pursuant to Federal Air Regulations."

Two months before he turned 60 Mr. Coupé brought the present lawsuit against Federal Express in the United States District Court for the Western District of Tennessee. In addition to setting forth the facts outlined above, the complaint averred, among other things, that the FAA had promulgated the age 60 rule prior to enactment of the ADEA; that the EEOC has repeatedly taken the position that the rule violates the statutory prohibition against age discrimination; that the position from which the plaintiff was to be discharged "is not one for which age is a bona fide occupational qualification;" and that other than age, Federal Express had no reasonable basis for discharging the plaintiff.

Pursuant to Rule 12(b)(6), Fed.R.Civ.P., Federal Express moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The district court granted the motion, and Mr. Coupé has perfected a timely appeal.

## II

Mr. Coupé asks us to declare the age 60 rule an invalid exercise of agency rulemaking power. The FAA not being a party to this litigation, we are at a loss to understand how we could do so. Federal Express, unlike the FAA, has no strong incentive to defend the rule; as its arguments to us attest, its interest lies in avoiding an injunction that compels it to violate a federal regulation. Mr. Coupé would have us strike down the age 60 rule without giving the agency that promulgated

it a chance to defend the rule's legitimacy; this we decline to do.

## III

Mr. Coupé also submits that he is entitled to an injunction requiring Federal Express to reinstate him as a pilot with no loss of rank or seniority. Because we agree with the district court that the age 60 rule provides Federal Express a good defense to the ADEA claim as a matter of law, we do not believe that Mr. Coupé has any right to such an injunction.

## A

As we have indicated, it is not unlawful for an employer "to take any action otherwise prohibited [by the ADEA] ... where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business...." 29 U.S.C. § 623(f)(1). The Equal Employment Opportunity Commission has elaborated on this statutory "BFOQ defense" as follows:

"An employer asserting a BFOQ defense has the burden of proving that (1) the age limit is reasonably necessary to the essence of the business, and either (2) that all or substantially all individuals excluded from the job involved are in fact disqualified, or (3) that some of the individuals so excluded possess a disqualifying trait that cannot be ascertained except by reference to age. If the employer's objective in asserting a BFOQ is the goal of public safety, the employer must prove that the challenged practice does indeed effectuate that goal and that there is no acceptable alternative which would better advance it or equally advance it with less discriminatory impact." 29 C.F.R. § 1625.6(b).

In maintaining the age 60 rule subsequent to enactment of the ADEA, the FAA has never expressly purported to establish a bona fide occupational qualification for ADEA purposes. See *Equal Employment Opportunity Comm'n v. Boeing Co.,* 843 F.2d 1213, 1220 (9th Cir.), *cert. denied,* 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 212 (1988). That is not the FAA's function; "Congress has not provided for agency determination of

whether a particular age is a BFOQ for a particular occupation." *Hahn v. City of Buffalo*, 770 F.2d 12, 15–16 (2d Cir.1985). Nonetheless, as we shall explain, the FAA performed the same sort of analysis that a court would undertake in determining the legitimacy of a BFOQ defense under the framework established by the EEOC regulation.

As to the first element, the FAA determined—though not in so many words, of course—that its age 60 requirement "is reasonably necessary to the essence of the business...." 29 C.F.R. § 1625.6(b)(1). The business in this case is that of flying aircraft engaged in Part 121 operations. The rule was first promulgated in 1959 "because of concerns that a hazard to safety was presented by utilization of aging pilots in air carrier operations." See 60 Fed.Reg. 65977 (1995). The FAA has reaffirmed the rule several times, most recently in 1995, noting that "[c]learly ... there is progressive anatomic, physiological, and cognitive decline associated with aging...." *Id.* at 65981.

■ The FAA has thus decided that safety concerns made the age 60 rule "reasonably necessary" for pilots in Part 121 operations. Safety concerns may be factored into the BFOQ calculus if safety goes "to the core of the employee's job performance"—that is, when the safeguarding of human lives is an inherent part of the job. *United Auto. Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 203, 111 S.Ct. 1196, 1205, 113 L.Ed.2d 158 (1991). Safety, in our view, goes "to the core" of an aircraft pilot's performance.[1]

As to the second element of the EEOC regulation, the employer has the burden of showing (a) that all or substantially all individuals excluded from the job involved are in fact disqualified, *or* (b) that some of the

individuals so excluded possess a disqualifying trait that cannot be ascertained except by reference to age. The FAA's age 60 rule is premised on the impossibility or impracticality of determining, on an individualized basis, whether a particular pilot's age renders him unable to perform safely and effectively.

In 1959 the FAA justified the rule on the ground that pilot "incapacity ... cannot be predicted accurately as to any specific individual on the basis of presently available scientific tests and criteria." See 60 Fed. Reg. 65977, 65978 (1995). While acknowledging advances in medical science, the FAA continues to believe that the risk of an aged pilot becoming incapacitated in flight cannot be accurately assessed. "[A]t some age," the FAA stated in 1995, "everyone reaches a level of infirmity or unreliability that is unacceptable in a pilot in air transportation. That age will vary from person to person but cannot yet be predicted in a specific individual." *Id.* at 65981. The FAA rejected the notion that current medical technology can distinguish between those pilots over 59 years old who present safety risks and those who do not. *Id.* at 65985. The FAA thus concluded, in effect, that "some of the individuals so excluded [by the age limit] possess a disqualifying trait that cannot be ascertained except by reference to age." See 29 C.F.R. § 1625.6(b)(3).

When a safety justification is offered by an employer, the EEOC regulation also requires that there be "no acceptable alternative [to an age limit] which would better advance [the safety rationale] or equally advance it with less discriminatory impact." 29 C.F.R. § 1625.6(b). The FAA has considered alternatives to the age 60 rule, such as performance testing and medical certification, and has rejected each alternative as less safe than the age 60 rule. In the agency's opin-

---

1. The Ninth Circuit has questioned whether the FAA's age 60 rule establishes a BFOQ defense even for those employers covered by the rule. *Boeing Co.*, 843 F.2d at 1220. The employer in *Boeing* was not covered by the rule, however, so the court's observations were dicta. We know, moreover, that the "highest degree of safety in the public interest" *is* "reasonably necessary" to Federal Express's aircraft operations—for Congress has said so. See 49 U.S.C. § 44701(d)(1)(A) (when promulgating regula-

tions, the FAA Administrator must consider *"the duty of an air carrier* to provide service with the highest possible degree of safety in the public interest") (emphasis added); see also *Murnane v. American Airlines, Inc.*, 667 F.2d 98, 101 (D.C.Cir.1981) ("we find the maximization of safety to be 'reasonably necessary to the normal operation' of [the defendant airline]"), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982).

ion, none of these options can adequately detect certain risks associated with aging. 60 Fed.Reg. 65977, 65983–84 (1995).

**B**

■ The FAA adopted the age 60 rule for reasons that might well support a BFOQ defense if the FAA were the employer. But the fact that the FAA's rationale might support such a defense in that situation does not mean that an age 60 rule would necessarily establish a BFOQ defense if a private employer adopted such an age limit voluntarily. The BFOQ defense requires a particularized, factual showing that the employer's practice is reasonably necessary for the particular job in question. See *Johnson v. Mayor and City Council of Baltimore,* 472 U.S. 353, 362, 105 S.Ct. 2717, 2722, 86 L.Ed.2d 286 (1985); 29 C.F.R. § 1625.6(a); *Tuohy v. Ford Motor Co.,* 675 F.2d 842, 844 (6th Cir.1982). The validity of a BFOQ defense turns upon factual findings. See *Criswell,* 472 U.S. at 422, 105 S.Ct. at 2755; *Boeing Co.,* 843 F.2d at 1216. Must Federal Express therefore adduce evidence in support of the rule and convince a judicial factfinder that an age limitation for its pilots is a BFOQ on its own merits? We think not.

■ The employer's burden to make a particularized factual showing in support of its BFOQ defense is satisfied by demonstrating the existence of an age-based federal agency rule by which the employer is bound—at least where, as here, the rule has been adopted on grounds that could support a BFOQ defense had the age limit been adopted by the employer voluntarily. We do not hold that the conclusions the FAA has drawn from the scientific evidence are necessarily correct, although we have no reason to question their correctness.[2] We hold only that Federal Express need not independently

judge the soundness of the age 60 rule. Were it otherwise, Federal Express would be required to second-guess the very agency established by Congress to regulate it. We do not believe that the ADEA mandates such a peculiar result, and we are aware of no judicial decision holding that it does.

**IV**

■ Mr. Coupé was not without a remedy for the perceived discrimination. The FAA is authorized to grant exemptions from the safety regulations it has promulgated, see 49 U.S.C. § 44701(e), and it has prescribed detailed procedures for handling requests for exemptions. See 14 C.F.R. § 11.25. Mr. Coupé knew of the FAA's exemption procedure, as is evidenced by the fact that he requested such an exemption in 1994. See 59 Fed.Reg. 33035 (1994):

> "Docket No. 27751
>
> Petitioner: Robert J. Coupé
>
> Sections of the [federal air regulations] affected: 14 CFR 121.383(c)
>
> Description of Relief Sought: To permit Mr. Coupé to continue to exercise his airman's privileges as a DC–10 captain after age 60, and until such time as he can no longer pass the required physical, skill, and competency testing and training."

The FAA denied the exemption. See 61 Fed.Reg.1984 (1996).[3] Mr. Coupé could have obtained judicial review of the denial, see 49 U.S.C. § 46110(a), but apparently he chose not to do so. Mr. Coupé not having challenged the FAA's action, neither the district court nor this court is empowered to grant an exemption in the first instance.

**AFFIRMED.**

---

**2.** After oral argument in this case, the United States Court of Appeals for the District of Columbia Circuit upheld the FAA's 1995 decision to retain the age 60 rule. *Professional Pilots Federation v. Federal Aviation Admin.,* 118 F.3d 758 (D.C.Cir.1997). The court concluded that the ADEA, which speaks only to employers, "places no substantive limitation upon the agency's authority to act as a regulator of the airline industry." *Id.* at 763. The court also concluded that

the FAA did not act arbitrarily or capriciously in retaining the rule. *Id.* at 766.

**3.** The request for and denial of an exemption are not part of the record before this court, and the parties have not alluded to the exemption proceedings in their briefs. Because the information is contained in the Federal Register, however, we can and do take judicial notice of it.