**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 27, 2009

No. 08-10624

Charles R. Fulbruge III
Clerk

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Plaintiff - Appellant

v.

EXXON MOBIL CORPORATION

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, SMITH, and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

This appeal questions whether Exxon Mobil Corporation ("Exxon"), a private employer of corporate jet pilots, may remove its pilots from flight status on the basis of age. Exxon contends that age is bona fide occupational qualification ("BFOQ") for the pilots, such that it may require them to retire when they reach a certain age. Exxon seeks to establish this proposition on the basis of a Federal Aviation Administration ("FAA") regulation that requires *commercial* pilots to retire at a certain age.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

For reasons that we will explain, however, we cannot answer this question today. We instead must remand for further development.

I.

The Age Discrimination in Employment Act of 1967 ("ADEA") generally prohibits an employer from discriminating on the basis of age. *See* 29 U.S.C. § 623(a). As an exception, an employer may discriminate based on age "where age is a bona fide occupational qualification [BFOQ] reasonably necessary to the normal operation of the particular business." *Id.* § 623(f)(1). This exception operates as an affirmative defense. *See* 29 C.F.R. § 1625.6(b).

One approach in establishing this defense is to claim entitlement to assert a federal regulation that itself allows discrimination on the basis of age. However, such a regulation "is not to be accorded conclusive weight" unless it binds the employer asserting it. *See W. Air Lines, Inc. v. Criswell*, 472 U.S. 400, 418 (1985); *Coupé v. Fed. Ex. Corp.*, 121 F.3d 1022, 1026 (6th Cir. 1997). The extent to which the regulation is probative of another employer's BFOQ defense depends on two elements: first, the evidence supporting the regulation's rationale justifying discrimination; and second, the congruity between the occupations at issue. *Criswell*, 472 U.S. at 418. The employer must prove both of these elements for the federal regulation to establish its BFOQ defense.

II.

Exxon employs pilots to fly a fleet of corporate jets—that is, until the pilots reach a certain age. Exxon then removes them from flight duty. It requires them to retire if no appropriate, non-flight employment is available within the

corporation. Exxon's age-based policy mirrors an FAA regulation that removes commercial pilots from flight duty at a certain age.[1]

A group of pilots whom Exxon removed from flight status because of their age, or whose removal was imminent, filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). They asserted that Exxon's age-based policy violates the ADEA. The EEOC agreed. It attempted conciliation with Exxon, then initiated the present action on the pilots' behalf.

The EEOC immediately applied for a temporary restraining order and a preliminary injunction to prevent Exxon from requiring its older pilots to retire while this action remains pending. As relevant to this appeal, Exxon raised the defense that age is a BFOQ for its pilots, "reasonably necessary" because: (1) some Exxon pilots experience physiological or psychological deterioration as they age that prevents them from performing their job duties safely and efficiently; and (2) no test can reliably determine which among Exxon's older pilots are unsafe. In support, Exxon cited the FAA regulation that removes commercial airline pilots from flight duty when they reach a certain age. Exxon also cited various FAA statements that no physiological or psychological test had been available during the time relevant to this litigation that could reliably determine which among older pilots are unsafe. It also introduced expert testimony to the same effect. The EEOC countered Exxon's evidence with expert affidavits that reliable, individualized testing *had* been available to determine which among older pilots are unsafe. In supplemental briefing, the EEOC added

_____

[1] The FAA historically has removed commercial pilots from flight duty at age sixty. *See* 14 C.F.R. § 121.383(c) (2007). The FAA now permits commercial pilots to fly until age sixty-five, with the exception that a commercial pilot between ages sixty and sixty-five may not fly internationally unless accompanied by a pilot under age sixty. 14 C.F.R. § 121.383(e) (2009). At all times relevant to this action, Exxon's policy for its corporate pilots mirrored the FAA regulation in effect for commercial pilots.

to this evidence by citing FAA statements, more recent than Exxon's, suggesting the agency no longer supported its age-based rule for commercial pilots. The district court weighed the conflicting evidence and denied the preliminary injunction.

Exxon and the EEOC then proceeded to litigate the merits of the case. In this phase, they disagreed as to how discovery should proceed. Exxon proposed bifurcating discovery, first restricting it to the "narrow but outcome determinative issue" of congruity and then opening it to other issues only if the congruity issue did not dispose of the case. The EEOC proposed opening discovery and pre-trial motions to all issues, including the weight of the evidence supporting the FAA regulation, from the outset.[2] The district court adopted Exxon's proposal, entering an order that the parties first conduct discovery and then present motions addressing solely the issue of congruity. According to the court's order, the parties would conduct discovery and present motions on other issues, including the weight of the evidence supporting the FAA regulation's safety rationale, only if "this case is not disposed of on the issue of congruence as a matter of law."

After discovery on occupational congruity had been completed, Exxon moved for summary judgment. Despite the district court's order bifurcating the separate issues, Exxon's memorandum in favor of summary judgment addressed the continuing validity of the FAA regulation's rationale as well as the issue of congruity. The EEOC's responsive memorandum, by contrast, adhered to the scheduling order; it addressed only the issue of congruity.

---

[2] Among these issues, the EEOC sought discovery that would supplement its preliminary-injunction evidence of the timely availability of physiological or psychological testing that could reliably determine which among older pilots are unsafe.

When ruling on summary judgment, the district court acknowledged that the probative value of the FAA's age-discriminatory regulation to Exxon's BFOQ defense depended on two factors: the congruity between the occupations at issue *and* the weight of the evidence supporting the regulation's safety rationale. Although the district court had directed the parties to conduct discovery and present motions addressing only the issue of congruity, its opinion on summary judgment proceeded to assume that the rationale justifying the FAA's regulation remained valid. The district court only then proceeded to address the issue of congruity. It held that commercial piloting and Exxon corporate piloting are congruent for BFOQ purposes, and it granted Exxon's motion for summary judgment.[3]

## III.

On appeal, the EEOC presents arguments that implicate whether the district court erred in assuming the continuing validity of the rationale justifying the FAA's age-discriminatory regulation. Particularly, it argues that the district court had restricted discovery and dispositive motions solely to the issue of

---

[3] Some of the parties' arguments assume that the district court granted summary judgment solely on the issue of congruity; that its decision was unaffected by the evidence that it mentioned concerning the continuing validity of the FAA regulation's safety rationale. A close examination of the district court's opinion, however, reveals that its decision to grant summary judgment to Exxon depended both on the issue of congruity and on the continuing validity of the FAA regulation's safety rationale.

In any event, the district court could not have granted summary judgment to Exxon solely on the issue of congruity. *See Criswell*, 472 U.S. at 418 ("The extent to which the rule is probative varies with the weight of the evidence supporting its safety rationale and 'the congruity between the . . . occupations at issue.'" (quoting *Johnson v. Mayor & City Council of Baltimore*, 472 U.S. 353, 371 (1985))); *see also Monroe v. United Air Lines, Inc.*, 736 F.2d 394, 405 (7th Cir. 1984) ("[A] once valid BFOQ may lose its justification with advances in medical science. That the age 60 rule may have been a BFOQ in [the past] does not place it beyond challenge now.").

congruity; and that it had provided the EEOC no notice that it would reverse course, opening all issues for decision.

On the other hand, Exxon presents us with arguments suggesting that the EEOC has waived this contention. It cites its memorandum in favor of summary judgment, which addressed both congruity *and* the weight of the evidence supporting the FAA regulation's rationale. Consequently, the proper time for the EEOC to object to considering the continuing validity of the FAA regulation's rationale may have been in its memorandum opposing summary judgment—the memorandum in which it addressed only the issue of congruity. Furthermore, Exxon points out, the EEOC did not appeal from the district court's scheduling order that bifurcated discovery and pre-trial motions; and the EEOC did not move under Federal Rule of Civil Procedure 56(f) to continue summary-judgment proceedings pending discovery on issues other than congruity.

We agree with Exxon that the EEOC could have been more alert in the summary-judgment proceedings. Nevertheless, the EEOC was entitled to rely on the district court's specific order that both parties restrict discovery and summary-judgment motions solely to the issue of congruity. The district court's assumption concerning the rationale justifying the FAA's regulation was beyond the scope of its scheduling order; and insofar as the court's decision depended on this assumption, it amounted to a *sua sponte* grant of summary judgment on an issue and on grounds about which it did not give the EEOC proper notice. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."); *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 504 (5th Cir. 1994) ("The district court failed to give ten days notice of its *sua sponte* motion to grant summary judgment, as required by Federal Rule of Civil Procedure

6

56(c). This court has strictly enforced this notice requirement." (footnotes omitted)).

The district court's error of assuming that the rationale for the FAA regulation remained valid—consequently exceeding the scope of its earlier order—was not harmless. The EEOC had indicated the sort of evidence that it would adduce to challenge the continuing validity of the FAA regulation's rationale: at minimum, expert testimony that reliable, individualized testing had been available to ascertain which among older pilots are unsafe. The district court's scheduling order precluded the EEOC from pursuing discovery or presenting such evidence and arguments on summary judgment. The district court nevertheless resolved the issue in Exxon's favor at summary judgment by assuming that the FAA regulation's rationale remained valid, even though the issue had been disputed and was not properly before the court.

In short, the continuing validity of the FAA regulation's rationale was, and is, a crucial and determinative issue in this case. The district court prejudiced the EEOC when it effectively granted summary judgment to Exxon by resolving this issue without giving the EEOC fair notice.[4]

---

[4] Because we reverse on this ground, we will not consider the EEOC's alternative arguments for reversal. These arguments include that the district court erred by disregarding the EEOC's preliminary-injunction evidence undermining the FAA regulation's safety rationale and in weighing the EEOC's summary-judgment evidence of occupational dissimilarity as being immaterial to Exxon's BFOQ defense.

In another alternative argument, the EEOC contends essentially that Exxon failed to meet its burden of production as to the continued validity of the FAA regulation's safety rationale; Exxon simply relied on FAA statements supporting the regulation's safety rationale instead of presenting its own evidence verifying the rationale's validity. Again, we do not reach this issue.

7

IV.

For the foregoing reasons, the judgment of the district court is VACATED. The case is REMANDED for further proceedings not inconsistent with this opinion.[5]

VACATED and REMANDED.

---

[5] Because we are vacating the judgment and remanding for further proceedings, we make no comment or judgment on the district court's ruling on the congruity of the job duties and responsibilities between commercial pilots and the Exxon pilots. Thus, the district court, in its appropriate discretion, may, or may not, reopen this issue. With respect to the weight of the evidence supporting the FAA regulation, however, our remand requires allowing the parties to develop and to present their respective evidence and arguments.