# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 25, 2014

Lyle W. Cayce
Clerk

No. 13-10164

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

> Plaintiff-Appellant,

v.

EXXON MOBIL CORPORATION,

> Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
U.S.D.C. No. 3:06-CV-1732

Before STEWART, Chief Judge, and GARZA and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant the Equal Employment Opportunity Commission ("EEOC") appeals the district court's summary judgment in favor of Defendant-Appellee Exxon Mobil Inc. ("Exxon"). The EEOC challenged Exxon's mandatory retirement policy requiring its corporate pilots to retire at age sixty as a violation of the Age Discrimination in Employment Act ("ADEA"). In response, Exxon asserted an affirmative defense—that the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10164

requirement was a bona fide occupational qualification ("BFOQ"), relying on a comparable rule utilized by the Federal Aviation Administration ("FAA") for commercial pilots. The district court granted summary judgment to Exxon based on this defense. The EEOC appealed, and a panel of this court reversed and remanded the case for additional discovery and a decision addressing the full BFOQ analysis. *See EEOC v. Exxon Mobil Corp. (Exxon I)*, 344 F. A'ppx 868 (5th Cir. 2009) (unpublished). On remand, the district court allowed additional discovery but again granted summary judgment to Exxon. The EEOC now appeals this judgment. We affirm the district court for the following reasons.

## I. BACKGROUND

Enacted in 1967, part of the ADEA's purpose is "to promote employment of older persons based on their ability rather than age [and] to prohibit arbitrary age discrimination in employment . . . ." 29 U.S.C. § 621(b). Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This proscription presently applies to all persons at least forty years old. 29 U.S.C. § 631(a). However, Congress recognized that classifications based on age "may sometimes serve as a necessary proxy for neutral employment qualifications essential to the employer's business." *W. Air Lines, Inc. v. Criswell*, 472 U.S. 400, 411 (1985). The ADEA provides that such a classification is lawful "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business . . . ." 29 U.S.C. § 623(f)(1). The BFOQ defense has only "limited scope and application" and "must be construed narrowly." *Criswell*, 472 U.S. at 412 (internal quotation marks omitted) (quoting 29 C.F.R. § 860.102(b)(1984)).

2

To establish a BFOQ, an employer must demonstrate: (1) that the classification is "reasonably *necessary* to the normal operation of the particular business;" and (2) that "the employer is compelled to rely on age as a proxy for the safety-related job qualifications validated in the first inquiry." *Criswell*, 472 U.S. at 413–14 (internal quotation marks and citation omitted) (emphasis in original). There are two ways to establish the second prong of this test: (1) the employer had reasonable cause to believe that substantially all persons over the particular age would be unable to perform the job safely and efficiently, or (2) it is "impossible or highly impracticable to deal with the older employees on an individualized basis." *Id.* at 414. (internal quotation marks and citation omitted).

A federal regulation is "relevant evidence" in a BFOQ defense, but "it is not to be accorded conclusive weight." *Id.* at 418 (citation omitted). "The extent to which the regulation is probative of another employer's BFOQ defense depends on two elements: first, the evidence supporting the regulation's rationale justifying discrimination; and second, the congruity between the occupations at issue." *Exxon I*, 344 F. App'x at 869 (citing *Criswell*, 472 U.S. at 418). "The employer must prove both of these elements for the federal regulation to establish its BFOQ defense." *Id.* "Even in cases involving public safety, the ADEA plainly does not permit the trier of fact to give complete deference to the employer's decision." *Criswell*, 472 U.S. at 423.

In 1959, the FAA adopted a rule prohibiting pilots from flying in any operations in Part 121 of the FAA's regulations if the pilot was over the age of 60 ("Age 60 Rule"). *See* FAA Age 60 Rule, 24 Fed. Reg. 9772 (Dec. 4, 1959). Part 121 applies to "large commercial passenger aircraft, smaller propeller aircraft with 10 or more passenger seats, and common carriage operations of all-cargo aircraft with a payload capacity of 7,500 pounds." *Examining the Federal Aviation Administration's Age 60 Rule: Hearing Before the Subcomm.*

No. 13-10164

*on Aviation of the S. Comm. on Commerce, Science, and Transportation*, 109th Cong. 8 (2005) (statement of Dr. Jon L. Jordan, Federal Air Surgeon, Office of Aerospace Medicine, FAA).

The FAA supported this Age 60 Rule because:

> there is a progressive deterioration of certain important physiological and psychological functions with age, that significant medical defects attributable to this degenerative process occur at an increasing rate as age increases, and that sudden incapacity due to such medical defects becomes significantly more frequent in any group reaching age 60.

> Such incapacity, due primarily to heart attacks and strokes, cannot be predicted accurately as to any specific individual on the basis of presently available scientific tests and criteria. . . . Other factors, even less susceptible to precise measurement as to their effect but which must be considered in connection with safety in flight, result simply from aging alone and are, with some variations, applicable to all individuals. These relate to loss of ability to perform highly skilled tasks rapidly, to resist fatigue, to maintain physical stamina, to perform effectively in a complex and stressful environment, to apply experience, judgment and reasoning rapidly in new, changing and emergency situations, and to learn new techniques, skills and procedures.

FAA Age 60 Rule, 24 Fed. Reg. 9772 (Dec. 4, 1959).

Given these concerns, the FAA concluded that the "possible hazards . . . are entirely too serious to determine the question of safety by an attempt to balance the increased chances of an incapacitating attack against the possibility that the pilot might not be engaged in the carriage of a large number of passengers at the time of such an attack." *Id.* The FAA expressed hope that one day the rule might be unnecessary. *Id.* However, for the time being, the FAA concluded that safety could not be compromised. *Id.*

The Age 60 Rule applied to Part 121 operations only. *See* 14 C.F.R. § 121.383. The FAA expanded the application of the Age 60 Rule to include

commuter pilot operations[1] formerly in Part 135 when it moved these operations to Part 121. *See Yetman*, 261 F.3d at 669 n.3. However, the FAA continues to regulate corporate pilots in a separate part, Part 91. 14 C.F.R. § 91.501(b). Pilots regulated under Part 91 are not and have never been subject to the Age 60 Rule.

Despite frequent reconsideration and review, the Age 60 Rule remained intact until 2007. In 2007, in the middle of this litigation, Congress passed the Fair Treatment for Experienced Pilots Act ("FTEPA"), repealing the FAA's Age 60 Rule and generally permitting pilots to fly until age 65. 49 U.S.C. § 44729. The FTEPA applies only to those operations under Part 121 and was only prospective in application. *Id.* § 44729(b), (e)(1). The FAA subsequently reflected this change in its regulations. 14 C.F.R. § 121.383(d)(1).

## II. FACTS AND PROCEEDINGS

In 2006, the EEOC brought this suit on behalf of Exxon pilots after two of Exxon's pilots had filed charges with the EEOC alleging that their forced retirements violated the ADEA. Exxon employs pilots to fly a fleet of its corporate jets. At the commencement of this suit, Exxon maintained a corporate policy that prohibited its pilots from flying corporate aircrafts after they reached the age of sixty and forced such pilots to retire. This rule emulated the FAA's Age 60 Rule. Exxon responded to this complaint by raising an affirmative defense that the mandatory retirement requirement based on age is a BFOQ. *See* 29 U.S.C. § 623(f)(1). Exxon relied on the FAA's Age 60 Rule[2] to establish this defense. *See Exxon I*, 344 F. App'x at 870. The

---

[1] Commuter pilot operations are those that have 30 seats or less and 7,500 pounds or less payload capacity. *See Yetman v. Garvey*, 261 F.3d 664, 669 n.3 (7th Cir. 2001).

[2] When Congress passed the FTEPA, Exxon changed its policy to mirror this law, requiring its pilots to retire at the age of 65 and not 60. We agree with the district court that the passage of the FTEPA does not significantly alter our analysis. The parties make the same arguments and the question is whether as a matter of law Exxon has established that

underlying facts of this case are presented in greater detail in our *Exxon I* decision. *See id.* at 869–71.

Exxon filed for summary judgment based on its affirmative BFOQ defense, which the district court granted. The EEOC appealed and a panel of this court reversed. *Exxon I*, 344 F. App'x at 872. The panel held that the district court erred when it limited discovery and summary judgment pleadings to the issue of congruency between the two occupations. *Id.* This effectively assumed the continuing validity of the safety rationale behind the rule—a necessary element to establish a BFOQ defense. *Id.* Because the district court ruled in Exxon's favor on an issue not before the court the panel vacated the judgment and remanded the case. *Id.* at 872 (holding that the district court's decision "justifying the FAA's regulation was beyond the scope of its scheduling order; and insofar as the court's decision depended on this assumption, it amounted to a *sua sponte* grant of summary judgment on an issue and on grounds about which it did not give the EEOC proper notice" (citations omitted)). However, the panel did not address the validity of the district court's conclusions on the congruency between the two occupations and expressly permitted the district court to decide whether to reopen the issue of congruency. *Id.* at 872, n.5.

On remand, the district court permitted additional discovery regarding the continuing validity of the FAA's safety rationale behind its mandatory retirement policy. However, the district court limited discovery on the issue of congruency to evidence related to the change in the FAA's policy permitting commercial pilots to fly until age sixty-five. The district court denied the EEOC's motion to reopen discovery on this issue. The EEOC moved for partial

the requirement is a BFOQ for its pilots. For this reason, we will continue to refer to the rule as the FAA's Age 60 Rule.

No. 13-10164

summary judgment and Exxon moved for summary judgment. The district court granted summary judgment for a second time in favor of Exxon.

In its decision, the district court maintained its original opinion that the two occupations were congruent. It incorporated the analysis on this issue from its original opinion after concluding that neither party had presented arguments sufficient to alter it. The district court then held that Exxon had presented persuasive evidence that there was no genuine issue of material fact regarding the continuing validity of the safety rationale supporting the rule. Further, the EEOC failed to present any evidence that would create a genuine issue of material fact. Specifically, the EEOC failed to identify a specific test or method for identifying the risk of sudden incapacitation in an individual over the age of sixty or sixty-five. The district court concluded that age was still a determinative factor in deciding when a pilot may no longer fly. The EEOC timely appealed.

## III. DISCUSSION

The EEOC challenges three aspects of the district court's summary judgment: (1) the weighing of the conflicting evidence on the issue of congruence; (2) the consideration of the FAA's regulation, safety objectives, and rationale; and (3) the weighing of the conflicting evidence on the issue of the continuing validity of the FAA's safety rationale. We address each and affirm the district court in all respects.

### A.

We review a district court's summary judgment de novo, applying the same standards as the district court. *Ballard v. Devon Energy Prod. Co.*, 678 F.3d 360, 365 (5th Cir. 2012). "Summary judgment should be granted if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). When the evidence is such that a reasonable jury could return a verdict for the non-

7

movant there is a genuine issue of material fact. *Id.* "All facts and evidence must be taken in the light most favorable to the non-movant." *Id.* (internal quotation marks omitted). However, in order to avoid summary judgment, "the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *Id.*

**B.**

The EEOC argues that genuine issues of material fact remain precluding summary judgment based on the incongruity between the two occupations at issue. The EEOC asserts that the record refutes Exxon's contentions that because its pilots fly in the same airspace, with the same air traffic sectors, under identical weather conditions, and in the same congested domestic international airports the occupations are congruent. Specifically, the EEOC states that the piloting duties, planes, and operations of an Exxon pilot are materially different from that of a commercial pilot. In response, Exxon argues that these distinctions are not material. More importantly, according to Exxon, the EEOC improperly narrows the issue by ignoring the fact that pilots covered by Part 121 are not solely commercial pilots. Part 121 also includes those flying cargo planes and smaller commuter planes. Exxon states that its pilots must be compared to the wide range of piloting covered by Part 121, not solely large commercial aircrafts.

We agree with Exxon that the occupations are substantially similar and congruent. Exxon has put forth significant evidence demonstrating that its pilots fly similar planes, in similar conditions, and in the same airspace and airports as commercial pilots. Additionally, aspects of Exxon's piloting are more onerous than Part 121 piloting. Exxon's pilots must obtain some of their own pre-flight information, fly with little advance warning, allow passengers to change itineraries mid-flight, and occasionally fly into and out of unfamiliar remote airports. Although Exxon's pilots may face different regulations,

certifications, and testing, the essence of their occupation—piloting Exxon's corporate aircraft—is congruent to the essence of commercial piloting and other piloting covered by Part 121.

The EEOC has failed to address the fact that Part 121 covers a wide range of operations and to distinguish Exxon's operations. Instead, the EEOC's evidence compares only commercial piloting to Exxon piloting or corporate piloting generally. When compared to commercial pilots, the EEOC is correct that corporate pilots may fly fewer hours, operate on a varying schedule, and only fly in certain weather conditions. However, these distinctions are distinctions without difference. Exxon's operations function in much the same manner as commercial, commuter, or cargo operations, all types of piloting covered by Part 121. Thus, the EEOC has not shown a genuine dispute of material fact that the occupations lack congruence. We agree with the district court that the two occupations are highly congruent for purposes of establishing a BFOQ defense.[3] Pilots with a low risk of sudden incapacitation and subtle deterioration are reasonably necessary to Exxon's piloting.

## C.

Next, the EEOC argues that the district court improperly considered the FAA's regulations, safety objectives, and the Age 60 Rule. Specifically, it urges

---

[3] The EEOC relies on a Ninth Circuit case, *EEOC v. Boeing Co.*, 843 F.2d 1213 (9th Cir. 1988); however, the reasoning in *Boeing* is inapplicable. In *Boeing*, the Ninth Circuit found certain differences between a company's corporate pilots and commercial pilots, especially the fact that the corporate pilots did not fly passengers, significant in assessing the congruity of the occupations. *Id.* at 1220–21. However, in the years following *Boeing*, the FAA expanded Part 121 to include commuter pilots who fly fewer than thirty passengers. *See Yetman*, 261 F.3d at 669 n.3. Part 121 also includes cargo only pilots. *See Coupe v. Fed. Exp. Corp.*, 121 F.3d 1022, 1023–24 (6th Cir. 1997). Given these facts, we cannot agree with the EEOC that because Exxon generally flies fewer passengers its operations are not congruent to those of pilots in Part 121.

that the district court failed to evaluate the inapplicability of the evidence supporting the FAA's rule to Exxon's operations and improperly focused on the generalities of the occupations at issue. The EEOC relies on statements made by the FAA in connection with this litigation and in other contexts to support this argument.[4]

The EEOC's argument is unavailing. As discussed above, we have determined that the occupations are substantially similar and congruent. Although the FAA has not applied the Age 60 Rule to corporate pilots, that alone is insufficient to demonstrate a genuine issue of material fact concerning the applicability of the FAA's safety rationale. To imply such an automatic conclusion ignores the relevancy of federal regulations or statutes in a private employer's ability to establish a BFOQ. The FAA has not expressed any opinion on a private employer's decision to apply the rule to operations outside of Part 121. Nor would its opinion necessarily be decisive on a private employer's ability to establish a BFOQ.[5]

Despite the EEOC's assertions, this case is not similar to *Criswell*. In *Criswell*, the Court noted that there was evidence demonstrating that the FAA, the defendant airline, and other airlines recognized less rigorous qualifications for similar positions. *See Criswell*, 472 U.S. at 418. Here, the FAA recognizes the same exact qualifications for pilots in positions that we have concluded are substantially similar and congruent. The EEOC has not presented evidence explaining the FAA's rationale for declining to apply the rule to pilots regulated by Part 91 like Exxon's nor has the EEOC adequately explained why

---

[4] Specifically, the EEOC relies on a letter between its counsel and the FAA's counsel as well as a brief submitted to the district court by the FAA. Both of these documents were submitted to the district court in order to ascertain whether the FAA was a necessary party of this litigation, which the FAA adamantly stated it was not.

[5] As recognized by the FAA, any BFOQ determinations made by the agency would be beyond the scope of its statutory authority.

the FAA's safety rationale would be inapplicable to Exxon's pilots when the occupations are congruent.[6]

The EEOC alleges that the type and size of the commercial planes, as well as their passenger capacity, factored strongly into the FAA's safety rationale behind the rule. Therefore, the differences between Exxon's operations and commercial operations matter in determining the applicable safety rationale. However, the EEOC fails to support its argument that these were "strong factors" in the FAA's decision. Again, as Exxon has sufficiently demonstrated, Part 121 operations also include piloting operations that carry only cargo or as few as ten passengers. The fact that the FAA utilized and continues to utilize the same safety rationale to apply its rule to include these type of operations undercuts the EEOC's assertions. Without any evidence to support its position, the EEOC has not established that the district court's analysis was in error, and we agree with the district court's application of the FAA's regulations, safety objectives, and the Age 60 Rule.

### D.

Finally, the EEOC argues that Exxon has not proven that it was compelled to establish and keep the mandatory retirement rule. The EEOC asserts that age is not an adequate predictor of fitness and that individualized testing is not impractical nor impossible. Therefore, the safety rationale behind the rule is insufficient to support it. Alternatively, the EEOC argues that there is a genuine issue of material fact regarding the individualized testing. The district court, according to the EEOC, improperly weighed the

---

[6] Part 91 covers a wide array of piloting operations from the solo pilots to corporate pilots. The FAA may have chosen not to apply the rule for a variety of reasons. That decision does not preclude the application of the FAA's safety rationale—avoiding the increasing risk of sudden pilot incapacitation—as support for Exxon's rule when Exxon has demonstrated that the occupations are congruent and that the FAA's safety rationale should apply with equal force to its pilots.

evidence and made credibility determinations on this issue. We address each argument in turn, but we ultimately conclude that the EEOC's arguments are unavailing.

Exxon has established that it was compelled to adopt the rule because there are no adequate means of individually testing each pilot. Exxon presented the testimony of several medical professionals—including a cardiologist and neurologist—and the reports of multiple organizations on the issue. Each affirmed the notion that there are no adequate medical tests that would help Exxon predict whether a pilot was at risk for suffering sudden and subtle incapacitation while in flight. Further, the evidence confirmed that the risk for this incapacitation increased significantly with age and no individualized testing could account for this increased risk.

The EEOC offered expert testimony and evidence of its own but fails to raise a genuine issue of material fact. The EEOC has not demonstrated that there is a specific means of individualized testing that would account for every risk of sudden incapacitation, a risk which Exxon has shown increases with age. Instead, the EEOC argues that the current method of testing pilots is the best method of assessing risk, accidents involving in-flight incapacitations are exceedingly rare and affect pilots of all ages, and other countries and companies permit pilots to fly over age sixty without incident. However, these arguments fail to challenge the underlying safety rationale of the rule or its continuing validity—namely, that the risk of sudden incapacitation increases with age and this cannot be accurately tested or predicted on an individualized basis. As Exxon has demonstrated, even with the current testing there remains a risk that cannot be accounted for or detected. Because the EEOC has not offered record evidence identifying a means of testing that would predict or test for this risk on an individualized basis, Exxon is entitled to summary judgment.

No. 13-10164

## IV. CONCLUSION

For the aforementioned reasons, we conclude that Exxon has established that its mandatory age retirement rule is a BFOQ and the EEOC has not demonstrated a genuine issue of material fact; therefore, we AFFIRM the district court.